CITY OF PONTIAC v BALDWIN

Docket No. 86112. Submitted March 4, 1986, at Lansing. Decided May 12, 1987.

William G. Baldwin was convicted of obstructing or hindering a police officer in the discharge of the officer's duties, a violation of the Pontiac City Code, following a jury trial in district court. The charge arose out of a domestic dispute between defendant and his son. Two police officers were dispatched to defendant's home to investigate an alleged fight between defendant and his son, but when the officers arrived defendant and his son had stopped fighting and defendant was preparing to go for a drive. The police, informed by defendant's wife that defendant was drunk, had been fighting with their son, and was preparing to leave, confronted defendant as he was about to back out of his driveway. The officers identified themselves and told defendant they wanted to talk to him. Defendant said he didn't want to talk to the officers and started to leave. The officers then forcibly removed defendant from the car and arrested him for refusing to cooperate. Defendant appealed his conviction to the Oakland Circuit Court, which affirmed, Hilda R. Gage, J. The Court of Appeals denied leave to appeal. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted, ordering the Court of Appeals to address the issue of "whether a citizen who attempts to leave when lawfully stopped pursuant to *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), may be prosecuted for obstructing a police officer." 422 Mich 941 (1985).

The Court of Appeals *held:*

The police officers had an articulable, particularized suspicion that defendant was involved in the alleged assault and battery and therefore were justified in initially stopping defendant. The police officers were justified in approaching defendant and telling him they wanted to question him. However, a person

REFERENCES

Am Jur 2d, Search and Seizure §§ 10, 22, 33.

Law enforcement officer's authority, under Federal Constitution, to "stop and frisk" person—Supreme Court cases. 32 L Ed 2d 942.

approached by the police need not answer any questions put to him and may go on his way. Thus, the police officers could not compel defendant to answer their questions. Refusal to answer questions during an investigatory stop does not rise to the level of obstructing or hindering a police officer in the discharge of his duties. Defendant's conviction for obstructing or hindering a police officer in the discharge of his duties is reversed.

Reversed.

1. CRIMINAL LAW — INVESTIGATORY STOPS — REFUSAL TO ANSWER QUESTIONS.

A police officer is authorized to stop an individual where he has reasonable suspicion that a crime has been or is taking place and, as long as he can articulate specific reasonable facts warranting the stop, the stop is valid; the person stopped, however, need not answer any questions put to him and may go on his way.

2. CRIMINAL LAW — OBSTRUCTING OR HINDERING POLICE — INVESTIGATORY STOPS — REFUSAL TO ANSWER QUESTIONS.

A person who merely refuses to answer questions during an investigative stop by the police cannot be prosecuted for obstructing or hindering a police officer in the discharge of his duties.

*Jacques, Reeds & Ziem* (by *Michael W. Reeds*), for defendant.

Before: SHEPHERD, P.J., and M. J. KELLY and R. L. TAHVONEN,* JJ.

PER CURIAM. Following a jury trial in district court, defendant was convicted of obstructing or hindering a police officer in the discharge of the officer's duties, under Pontiac City Code, Art 9, § 16-95. Defendant was sentenced to thirty days in the Oakland County Jail and assessed a $500 fine and $250 in costs, with the sentence increased to ninety days if defendant failed to pay the fine and costs. The Oakland Circuit Court affirmed defendant's conviction. This Court denied defendant leave to appeal. The Supreme Court remanded the

* Circuit judge, sitting on the Court of Appeals by assignment.

case to this Court for consideration as on leave granted, ordering that this Court address the issue "whether a citizen who attempts to leave when lawfully stopped pursuant to *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), may be prosecuted for obstructing a police officer." 422 Mich 941 (1985).

This case arose out of a domestic dispute that occurred in defendant's home shortly before midnight on July 8, 1982. Defendant returned from work at about 11:15 P.M. after having stopped somewhere on the way with a friend and drinking three bottles of beer. When defendant arrived at home, his wife, daughter, and son Billy were there. Billy was lying on the couch in the living room watching television. Defendant and Billy began arguing loudly over Billy's unemployment and other matters. The two men began wrestling and pushing and shoving one another, and defendant's wife and daughter tried to stop the fighting.

Defendant's wife eventually called the police and told them to send a car because her husband and son were fighting. She did not say who was the aggressor. Defendant's daughter called the police shortly thereafter to see if officers were on the way. In the meantime, defendant stopped arguing and fighting and said he was leaving, perhaps to take a drive. He did not know the police were coming.

Two officers of the Pontiac Police Department responded to the call and met defendant's wife at the front door. She told them that defendant had been drinking and fighting with their son and was around the back of the house preparing to leave. Neither officer knew whether defendant had been the aggressor or whether anyone had been injured in the fight. They wanted to talk to defendant to determine whether he had done anything wrong or

was injured, so they went around to the back of the house.

The officers saw a dome light on in defendant's car and identified themselves as police officers who wanted to speak to defendant about the incident. Defendant said he did not want to speak with them. The car started and its back-up lights went on. The officers told defendant to stop and get out of the car because they wanted to talk to him. Defendant yelled that he was not going to stop but was leaving. Defendant's speech was slurred, and the officers could see that defendant's eyes were red and could smell alcohol on his breath. One officer opened the car door while the car was in reverse gear and asked defendant to get out. Defendant refused to leave the car and had to be forcibly removed. The officers and defendant tumbled to the ground, and defendant was handcuffed.

The officers testified that the basis of the arrest was that defendant was about to drive away before the officers had completed their investigation. The officers felt that defendant was not fit to drive and might have been responsible for the alleged assault and battery. They testified that they arrested defendant for refusing to cooperate.

The police officers were justified in initially stopping defendant. The Fourth Amendment guarantees against unreasonable searches and seizures, *United States v Sharpe,* 470 US 675; 105 S Ct 1568; 84 L Ed 2d 605 (1985); *People v Shabaz,* 424 Mich 42, 52; 378 NW2d 451 (1985), cert gtd — US —; 106 S Ct 1489; 89 L Ed 2d 891 (1986), and applies to seizures of persons that are short of traditional arrests, involving only brief detentions. *United States v Brignoni-Ponce,* 422 US 873, 878; 95 S Ct 2574; 45 L Ed 2d 607 (1975). Prior to *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), any restraints of a person amounting to a

seizure for purposes of the Fourth Amendment had to be justified by probable cause. See *Dunaway v New York,* 442 US 200, 207-209; 99 S Ct 2248; 60 L Ed 2d 824 (1979). The Court in *Terry* recognized a limited exception to the probable cause requirement for a seizure of a person if the police officer has a reasonable, articulable suspicion that the person has committed or is about to commit a crime. However, the articulable reasons for suspecting criminal activity must derive from the police officer's assessment of the totality of the circumstances with which he is confronted. *United States v Cortez,* 449 US 411, 417; 101 S Ct 690; 66 L Ed 2d 621 (1981).

In the instant case, the police officers were dispatched to defendant's home to investigate an alleged fight between defendant and his son. One officer testified that the dispatch was for "a man beating his son." When defendant's wife met the officers, she told them that defendant was drunk and had been fighting with their son and was about to leave. The officers went to defendant's car, where they found defendant putting the car into reverse. They noticed that defendant's eyes were red and his breath smelled of alcohol.

When these factors are considered together, the officers had an articulable, particularized suspicion that defendant was involved in the alleged assault and battery. Therefore, the officers had the requisite objective basis for particularized suspicion that would justify a *Terry* stop.

We now turn to the question whether defendant's conduct following the *Terry* stop was such that he could be prosecuted for obstructing a police officer. The police officers were justified in approaching defendant and telling him they wanted to question him. However, a person approached by the police need not answer any ques-

tions put to him. He may decline to listen to the questions and may go on his way. *Florida v Royer,* 460 US 491, 497-498; 103 S Ct 1319; 75 L Ed 2d 229 (1983), citing *Terry, supra; Davis v Mississippi,* 394 US 721, 727, n 6; 89 S Ct 1394; 22 L Ed 2d 676 (1969); *People v Burrell,* 417 Mich 439, 458; 339 NW2d 403 (1983); *People v Grimmett,* 97 Mich App 212, 216; 293 NW2d 768 (1980), lv den 411 Mich 853 (1981). Therefore, in the instant case, the police officers could not compel defendant to answer their questions.

A warrantless arrest for a misdemeanor such as obstructing a police officer can be made when the misdemeanor is committed in the officer's presence. MCL 764.15(1)(a); MSA 28.874(1)(a). The police officers testified that defendant was arrested for refusing to cooperate, i.e., answer their questions. Such conduct does not rise to the level of obstructing a police officer. Because a person cannot be compelled to answer questions posed by a police officer, *Davis, supra, Burrell, supra,* that person cannot be prosecuted for obstructing a police officer should he refuse to answer questions during a *Terry* stop. Therefore, defendant's conviction for obstructing or hindering a police officer in the discharge of his duty is reversed.

Because we find that defendant's conviction should be reversed on the basis of an improper arrest, it is unnecessary to address the other issues raised.

Reversed.