Ralph R. HANSEL, Plaintiff,

v.

Wayne BISARD, individually and in his official capacity as a deputy for the Jackson County Sheriff's Department; Kevin Stellingworth, individually and in his official capacity as a deputy for the Jackson County Sheriff's Department; and County of Jackson, Jointly and Severally, Defendants.

No. 97–75409.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 7, 1998.

William F. Piper, Kalamazoo, Michigan, for plaintiff.

David W. Swan, Jackson, Michigan, for defendants.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This case is presently before the Court on cross-motions for summary judgment filed by the parties on August 21, 1998.[1] The Court held a hearing on the parties' motions on November 12, 1998. Having heard the oral arguments of counsel and having reviewed the briefs and supporting documents submitted by the parties, the Court is now prepared to rule on the cross-motions. This Opinion and Order sets forth the Court's ruling.

### II. FACTUAL BACKGROUND

On the night of January 24, 1997, a 1983 Pontiac driven by Plaintiff's then sixteen

---

**1.** Defendants actually filed a Motion to Dismiss and for Summary Judgment. Pursuant to Fed. R.Civ.P. 12(b), the Court treats Plaintiff's 12(b)(6) Motion to Dismiss as a Motion for Summary Judgment for the purposes of this Opinion and Order.

year old daughter, Brenna Hansel, went off the right side of Kibby Road in Jackson, Michigan and struck a telephone pole.[2] Neighbors apparently heard the accident and reported it to the police, who dispatched Defendant Jackson County Sheriff's Deputy Wayne Bisard, to the scene.

Upon arriving at the scene, Deputy Bisard found that Brenna Hansel and a passenger from the automobile, later identified as Charlie Van Tuyle, were already in an ambulance. Deputy Bisard asked Ms. Hansel for her license, registration, and proof of insurance, and she informed him that the items were still in the car. Deputy Bisard retrieved the items from the car, but was unable to speak to Ms. Hansel further prior to the ambulance transporting her to Foote Hospital.

After completing his work at the scene, Deputy Bisard proceeded to Foote Hospital in order to speak with Ms. Hansel regarding the accident. By the time he arrived, however, Ms. Hansel had already left the hospital with her father, Plaintiff Ralph Hansel.[3] Deputy Bisard then proceeded to Ms. Hansel's residence.

Upon arriving at the Hansel residence around midnight, Deputy Bisard saw Plaintiff with a wrecker driver who was placing the damaged car in the garage. Deputy Bisard asked to speak with Ms. Hansel about the accident, and Plaintiff informed him that he would have to speak with her later because she was staying at her grandmother's house. In response, Deputy Bisard returned Ms. Hansel's registration and insurance, but told Plaintiff that he was retaining the license until he had the opportunity to speak with

Ms. Hansel. [Bisard Dep., p. 45]. The license was subsequently returned after Plaintiff made assurances that Ms. Hansel would contact Deputy Bisard on January 26, 1997.

Ms. Hansel did not contact Deputy Bisard on January 26, and there was no further contact between the parties until January 31, 1997. On that day, Deputy Bisard and Mr. Hansel spoke by telephone regarding whether Mr. Hansel would allow Deputy Bisard to interview Brenna. It is undisputed that Plaintiff informed Deputy Bisard that he had spoken with his attorney who had advised him that neither he or his daughter was under any obligation to speak with the police. In addition, Plaintiff offered to give Deputy Bisard his attorney's name and phone number. Deputy Bisard refused the offer and told Plaintiff that he would be seeking a warrant for obstructing justice. [Bisard Dep, p. 56].[4]

Immediately following the conversation, Deputy Bisard spoke with Defendant Sergeant Kevin Stellingworth regarding the situation. Approximately fifteen minutes later, Sergeant Stellingworth telephoned Plaintiff to ask whether he would allow another deputy to interview his daughter. Plaintiff refused, but indicated that the deputies could submit a list of written questions to his attorney for review.[5] The information was relayed to Deputy Bisard who refused the offer. Sergeant Stellingworth then advised Deputy Bisard to forward a copy of the police report to the prosecutor's office in order to seek a warrant for obstructing jus-

---

2. The car was owned and registered in the name of Brenna Hansel.

3. Apparently, neither Ms. Hansel nor Mr. Van Tuyle suffered serious injuries in the accident.

4. Each party claims to have made the January 31, 1997 phone call. [Plaintiff Dep., p. 69; Bisard Dep., p. 54]. In addition, the parties offered markedly different accounts of the January 31 conversation at their respective depositions. Mr. Hansel testified that Deputy Bisard first berated him for not calling earlier, and that Deputy Bisard subsequently refused Plaintiff's offer to speak with his daughter as long as their attorney was present. [Plaintiff Dep, p. 70]. In contrast, Deputy Bisard denies that Plaintiff ever offered

to allow Deputy Bisard to speak with Ms. Hansel with an attorney present. [Bisard Dep., p. 81].

5. Once again the parties offer different accounts of the telephone conversation between Sergeant Stellingworth and Plaintiff. Plaintiff alleges that Sergeant Stellingworth told him that there was no need for an attorney and that the deputies were not going to cooperate with an attorney. [Hansel Dep. p. 79]. Sergeant Stellingworth denies that he told Plaintiff he did not need an attorney, and testified that he did not recall the Plaintiff suggesting anything to the effect that a deputy could speak to his daughter as long as an attorney was present. [Stellingworth Dep. pp. 10–11, 20].

tice.[6]

On February 7, 1997, Deputy Bisard met with Jackson County Assistant Prosecutor Wade Mutchler, who then signed a warrant request form against Plaintiff for resisting and obstructing.[7] Deputy Bisard then proceeded to request formal charges against Plaintiff at a probable cause hearing before the Honorable Charles J. Falahee, 12th District Court for the County of Jackson. Following the hearing, Judge Falahee issued an arrest warrant, dated February 7, 1997.

Pursuant to the warrant, Plaintiff was arrested at his home on Friday night, February 7, 1997, and incarcerated in the Jackson County Jail until his release from custody on February 10, 1997. On April 1, 1997, Plaintiff and Mr. Mutchler entered into an agreement whereby the prosecutor agreed to dismiss the charges against Plaintiff in exchange for Plaintiff agreeing to allow Deputy Bisard to interview Brenna Hansel with an attorney present. Later that same day, Deputy Bisard conducted the interview and the court granted a motion for nolle prosequi and dismissed the case against Plaintiff without prejudice.

### III. PROCEDURAL HISTORY AND SUMMARY OF ARGUMENTS

On October 24, 1997, Plaintiff filed a five-count Complaint against Deputy Bisard and the County of Jackson, which was subsequently amended on July 16, 1998 to add Sergeant Stellingworth as a Defendant. Pursuant to the Amended Complaint, Plaintiff seeks recovery against Deputy Bisard and Sergeant Stellingworth for: (1) deprivation of his constitutional rights under 42 U.S.C. § 1983, including the First and Fourth Amendments and the alleged consti-

---

6. On February 3, 1997, Deputy Bisard issued two civil infraction charges against Brenna Hansel for careless driving and failing to wear a seat belt. Pursuant to a plea agreement, the careless driving charge was subsequently reduced and the seat belt charge dismissed.

7. Mr. Mutchler had previously prosecuted and obtained a conviction against Plaintiff for failing to obtain a gun permit. The conviction was subsequently reversed on appeal.

8. Plaintiff's state law assault and battery claim relates to Mr. Hansel's arrest for obstruction

tutional right to family privacy; and (2) state law tort claims of false arrest, false imprisonment, malicious prosecution, and assault and battery.[8] Plaintiff also seeks recovery under 42 U.S.C. § 1983 against the County of Jackson for its alleged failure to properly train Deputy Bisard and Sergeant Stellingworth.

In their August 21, 1998 motion for summary judgment, Defendants assert that Plaintiff was arrested pursuant to a valid warrant and thus he suffered no deprivation of a right secured by the Constitution. Defendants further assert that even if the Court finds a constitutional violation, Plaintiff's federal and state law claims against Deputy Bisard and Sergeant Stellingworth are barred by the doctrines of qualified immunity and statutory immunity, respectively.

In his own motion for summary judgment filed on August 21, 1998, Plaintiff asserts that he was falsely arrested and incarcerated for exercising his fundamental constitutional right to assert, on behalf of his 16 year old daughter, her Fifth Amendment right to remain silent and Sixth Amendment right to counsel. Accordingly, Plaintiff asks that the Court grant summary judgment in his favor on all of the claims against Deputy Bisard and Sergeant Stellingworth.[9]

### IV. ANALYSIS

#### A. Standards Applicable to Motions for Summary Judgment

Summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed.R.Civ.P. 56(c).

---

itself rather than any claim that Deputy Bisard used excessive force in the course of the arrest.

9. In the response to Defendant's Motion for Summary Judgment, Plaintiff concedes that there is an insufficient evidentiary basis to support his Section 1983 claim predicated on a violation of the First Amendment. [Plaintiff's Brief in Opposition, p. 7]. Accordingly the Court grants summary judgment in favor of the individual defendants on this claim.

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[10] According to the *Celotex* Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). *See also, Nernberg v. Pearce*, 35 F.3d 247, 249 (6th Cir.1994). The Court will apply the foregoing standards in deciding the parties' Motions for Summary Judgment in this case.

**B. *Plaintiff's Section 1983 Claims Against Deputy Bisard and Sergeant Stellingworth***

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of law." *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994) (citation omitted). In the present case, Plaintiff's predicates his section 1983 claims against Deputy Bisard and Sergeant Stellingworth on the alleged deprivation of his Fourth Amendment rights and the purported constitutional right to "family privacy."

**1. *Plaintiff's Fourth Amendment Claims***

Plaintiff first alleges that the individual Defendants violated his Fourth Amendment rights by arresting, incarcerating, and prosecuting him without probable cause.[11] Section 1983 claims predicated on false arrest, false imprisonment, or malicious prosecution fail if probable cause for an arrest is established. *Davey v. Tomlinson*, 627

---

10. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure*, § 2727, at 33 (1993 Supp.).

11. A section 1983 claim predicated on an allegation of malicious prosecution is properly analyzed under the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994).

F.Supp. 1458, 1464 (E.D.Mich.1986); *See also, Mark v. Furay,* 769 F.2d 1266, 1269 (7th Cir.1985) ("The existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff.").

In the instant case, Plaintiff was arrested for obstructing justice pursuant to section 479 of the Michigan Penal Code, which provides:

> Sec. 479. RESISTING, ETC., OFFICER IN DISCHARGE OF DUTY—Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff ... or who shall so obstruct, resist, oppose .. any of the above named officers ... in their lawful acts, attempts, and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars.

M.C.L.A. § 750.479. Defendants assert that Plaintiff violated section 479 by interfering with Deputy Bisard's duty under Michigan law to investigate Ms. Hansel's accident. Plaintiff contests this assertion on the grounds that Ms. Hansel was under no legal obligation to speak with Deputy Bisard regarding the circumstances surrounding the accident. In the absence of such an obligation, Plaintiff argues, his attempts to prevent Deputy Bisard from speaking with his daughter do not constitute obstruction.

In analyzing Plaintiff's argument, the Court first notes that the relevant threshold inquiry with respect to the obstruction statute is not whether Ms. Hansel was obligated to speak with Deputy Bisard, but whether Deputy Bisard's attempts to interview Ms. Hansel were in furtherance of his legal duties as a police officer. Pursuant to the Michigan Vehicle Code, a driver involved in an accident must immediately report the accident to the police, and the officer charged with investigating the accident must fully complete a

report of the accident which is forwarded to the state police. Specifically, M.C.L.A. § 257.622 provides:

> The driver of a motor vehicle involved in an accident that injures or kills any person, or that damages property to an apparent extent totaling $400.00 or more, shall immediately report that accident at the nearest or most convenient police station, or to the nearest or most convenient police officer. The officer receiving the report, or his or her commanding officer, shall immediately forward each report to the director of state police on forms prescribed by the director of state police. The forms shall be completed in full by the investigating officer. The director of state police shall analyze each report relative to the cause of the reported accident and shall prepare information compiled from reports filed under this section for public use.[12]

The express language of M.C.L.A. § 257.622 imposes a clear duty on "investigating officers," such as Deputy Bisard in the present case, to complete a report of car accidents. Thus, by attempting to interview Ms. Hansel, Deputy Bisard was merely trying to fulfill his statutory duty under Michigan law to investigate accidents.

■ Having determined that Deputy Bisard's attempts to speak with Ms. Hansel were in furtherance of his duty under M.C.L.A. § 257.622 to investigate accidents, the Court next addresses the issue of whether probable cause existed to arrest Plaintiff for obstruction in light of his attempts to prevent Deputy Bisard from speaking with his daughter regarding the accident. The record clearly establishes that Deputy Bisard arrested Plaintiff for obstruction pursuant to an arrest warrant, which was signed by Judge Falahee following a probable cause hearing. Reliance on a judicially secured warrant generally immunizes police officers from § 1983 actions predicated on Fourth Amendment violations:

---

12. In Michigan, the accident investigation form prescribed by the Director of State Police is commonly referred to as form UD–10. The parties disagree as to whether M.C.L.A. § 257.622 requires a driver involved in an accident to provide the information necessary for the investigating officer to complete UD–10. There is no dispute, however, that Deputy Bisard was under a statutory duty to investigate Ms. Hansel's accident.

Police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable.

*Yancey v. Carroll County, Ky.,* 876 F.2d 1238, 1243 (6th Cir.1989) (citing *Malley v. Briggs,* 475 U.S. 335, 344–46, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986)). An officer cannot rely on a judicial determination of probable cause, however, "if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey,* 876 F.2d at 1243.

Returning to the present case, the warrant issued by Judge Falahee, attached to Defendant's Motion as Exhibit 3–B, specifically authorizes Plaintiff's arrest for knowingly and wilfully obstructing Deputy Bisard's investigation of Ms. Hansel's traffic accident in violation of M.C.L.A. § 750.479. Accordingly, the Court finds that the arrest warrant itself is clearly not so lacking in indicia of probable cause as to render Deputy Bisard's reliance on the warrant unreasonable.

Having determined that the arrest warrant was facially valid, the Court now turns its attention to whether Deputy Bisard knowingly made false statements and omissions to Judge Falahee at the probable cause hearing such that but for these falsities the judge would not have issued Plaintiff's arrest warrant. An examination of the transcript of the probable cause hearing reveals absolutely no evidence of such falsities. In point of fact, Deputy Bisard expressly informed Judge Falahee of Plaintiff's attempts to involve his attorney at the February 7 hearing, and Judge Falahee nonetheless found probable cause to issue the arrest warrant for obstruction:

THE COURT: This concerns the case of the People of the State of Michigan versus Ralph Roland Hansel. File Number 97 343FY. We're before the court today for the swearing of an officer to obtain information to justify the signing of the complaint and the issuance of a warrant against Mr. Hansel. If you'd raise your right hand. Do you solemnly swear or affirm that the information that you give the court concerning this matter will be the truth?

OFF. BISARD: I do.

THE COURT: And if you could state your name and by whom you are employed

OFF. BISARD: My name is Wayne S. Bisard. I'm employed with the Jackson County Sheriff's Department.

THE COURT: And if you would give me the information that would justify the signing of the paperwork in this case.

OFF BISARD: On 1–24 of 97, Mr. Hansel, Ralph Hansel's daughter was involved in a PI accident at Kibby and Blue Lane. I did not get a chance to speak with her at the scene. I did not get a chance to speak with her at the hospital, she was released prior to my arrival. I went to the address where she lives and spoke with Mr. Hansel, at which point he did not agree to let me speak with her at the time. He stated that he would make an appointment with me the following Sunday. He did not follow through with that. I spoke with him on the 31st of January, 1997, at which point he stated that he had spoken to his lawyer. His lawyer advised him that he did not have to make a report and she did not need to speak to me.

THE COURT: I find there's enough information at this time that would justify the signing of the complaint and the issuance of the warrant and the paper work will be so signed at this time.

[Probable Cause Hearing Transcript, pp. 3–4]. Importantly, the record contains no evidence that Judge Falahee relied on anything besides Deputy Bisard's statement at the hearing in finding probable cause to arrest Plaintiff for obstruction.

▪ Despite the fact that the record contains no evidence of false statements or omissions, Plaintiff's counsel asserted at oral argument that the warrant still cannot insulate Deputy Bisard from liability because Judge Falahee misinterpreted the law in finding probable cause to arrest Plaintiff for obstruc-

tion.[13] This argument clearly mischaracterizes the law of the Sixth Circuit. Even assuming that Judge Falahee erred in finding probable cause to arrest Plaintiff for obstruction, a judicial error of this type would not subject Deputy Bisard to individual liability under section 1983. Pursuant to the clear standard set forth in *Yancey, supra*, Deputy Bisard is entitled to rely on a facially valid warrant absent a finding that he knowingly made false statements and omissions to the judge. Plaintiff has not provided, and record is devoid of, any evidence that would support such a finding. Accordingly, the Court grants summary judgment in favor of the Defendants on Plaintiff's Fourth Amendment Claims.

### 2. *Plaintiff's Right to Family Privacy Claim*

■ Plaintiff next asserts that Deputy Bisard and Sergeant Stellingworth are liable under 42 U.S.C. § 1983 for violating his clearly established constitutional right as a parent to assert his daughter's Fifth Amendment right to remain silent and Sixth Amendment right to counsel. Plaintiff brings this claim under the general rubric of the "right to family privacy."

Although the Constitution does not provide for any specific right of privacy, the Supreme Court has held that more specific constitutional guarantees may create "zones of privacy" and thereby impose limits upon government power. *Paul v. Davis*, 424 U.S. 693, 712–713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976); In *Paul*, the plaintiff alleged that damage to his reputation resulting from an arrest violated an individual's right to privacy guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution. The Supreme court rejected the plaintiff's section 1983 claim stating:

> Respondent's case, however, comes within none of these [zones of privacy]. He does not seek to suppress evidence seized in the course of an unreasonable search. And

our other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In *Roe* the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct. Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

*Paul*, 424 U.S. at 712–713, 96 S.Ct. at 1166 (internal citations omitted).

Mr. Hansel's family privacy claim, like the plaintiff's privacy claim in *Paul*, is similarly far afield from previously recognized zone of privacy cases. Deputy Bisard was not attempting to substantively regulate Plaintiff's relationship with his daughter, but rather simply attempting to interview Ms. Hansel about her car accident. Perhaps if Deputy Bisard had continued to interrogate Ms. Hansel after she asserted her Fifth Amendment rights he would have unconstitutionally interjected himself into a zone of privacy.

---

**13.** Specifically, Plaintiff argues that his reliance upon the advice of his attorney negates the intent requirement of obstruction. Regardless of its merits, this argument has no bearing on Deputy Bisard's potential liability under section 1983 for arresting Plaintiff for obstruction. Sixth Circuit case law clearly establishes that an officer can rely on a facially valid arrest warrant absent a finding that the officer knowingly made false statements and omissions to the judge. *Yancey*, 876 F.2d at 1243.

Similarly, if Deputy Bisard had restricted Plaintiff's ability to communicate with his daughter, he may have unconstitutionally inserted himself into a sphere considered "private" under the constitution. In point of fact, however, Deputy Bisard did nothing of the sort. Mr. Hansel was free at all times to advise his daughter of her rights and to recommend a course of action. While the Court recognizes that Plaintiff has a constitutional right to the custody and management of his children, this constitutional protection does not translate into a derivative right to unilaterally bar a police officer from questioning a sixteen year-old about an automobile accident. None of the cases cited by Plaintiff support such a proposition, and accordingly the Court will not recognize a "new" constitutional right where one does not exist.

 Even assuming, arguendo, that Mr. Hansel could derivatively assert his daughter's constitutional rights, it is not clear that Ms. Hansel's Fifth and Sixth Amendment rights were even implicated in the present case. The Fifth Amendment provides that "No person shall be ... compelled in any criminal case to be a witness against himself." The Supreme Court has interpreted this provision to mean that individuals may refuse to answer police questions that "are reasonably likely to elicit an incriminating response," judged primarily from the perspective of the suspect, rather than the intent of the police. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–1690, 64 L.Ed.2d 297 (1980). Thus, in order to assert the Fifth Amendment right, the indi-

vidual must possess some reasonable belief that a response will result in criminal liability.[14] An examination of the record, reveals absolutely no evidence that Ms. Hansel believed that she was under criminal investigation or that Deputy Bisard considered Plaintiff's daughter a criminal suspect.[15] Thus, even if Plaintiff could derivatively assert his daughter's constitutional rights in this case, the Court finds that Deputy Bisard's attempts to interview Ms. Hansel did not implicate her Fifth Amendment right to remain silent.

 Plaintiff also misconstrues the scope of the Sixth Amendment, which provides, "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." In the present case, Ms. Hansel was never charged with a crime, and as noted above the record contains no evidence that she was even the subject of a criminal investigation. Moreover, even assuming Ms. Hansel was the subject of a criminal investigation, the Sixth Amendment right to counsel does not attach until the time the government initiates adversary judicial proceedings against an individual. *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); *Massiah v. United States,* 377 U.S. 201, 205, 84 S.Ct. 1199, 1202, 12 L.Ed.2d 246 (1964). In the present case, adversary judicial proceedings were never initiated against Ms. Hansel and thus her Sixth Amendment right to counsel never attached.

In sum, the Court finds that the instant section 1983 claim predicated on accusations that the individual Defendants violated Mr.

---

**14.** Plaintiff wrongly cites *City of Pontiac v. Baldwin,* 163 Mich.App. 147, 413 N.W.2d 689 (1987), for the proposition that the Fifth Amendment provides a unilateral right to refuse to answer questions posed by police officers. In point of fact, *Baldwin* held that a person cannot be prosecuted for obstruction for failing to answer questions posed by a police officer during a *Terry* stop. 163 Mich.App. at 152, 413 N.W.2d at 692.

Even when the subject of a criminal investigation, an individual does not possess an absolute right to refuse questioning by the police. For example, the Supreme Court has held that the police can ask routine booking questions without violating an individual's Fifth Amendment rights. *See, Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990).

**15.** At oral argument, Plaintiff's counsel posited that Ms. Hansel may have declined to speak with Deputy Bisard to avoid implicating herself in the crime of failing to report an accident. Failing to report an .accident as required by M.C.L.A. § 257.622 is a misdemeanor. *See,* M.C.L.A. § 257.901. The record is devoid of any evidence, however, that Ms. Hansel actually feared prosecution for failure to report. Indeed, Plaintiff actually argues that Ms. Hansel's reporting requirement under § 257.622 was satisfied by proxy when neighbors reported the accident to the Jackson County Sheriff's Department. [Plaintiff's Brief in Support of Motion for Summary Judgment, p. 15].

Hansel's alleged constitutional right to family privacy is wholly without merit. Accordingly, the Court grants summary judgment in favor of the individual Defendants on Plaintiff's "family privacy" claims.

### C. *Plaintiff's State Law Tort Claims*

■ Plaintiff further alleges that because he was arrested and jailed without probable cause, the individual Defendants are liable under state law tort claims for false arrest, assault and battery, false imprisonment, and malicious prosecution.[16] As explained above, Plaintiff's arrest clearly passes constitutional muster under the standards set forth in *Yancey, supra*. The record firmly establishes that Deputy Bisard arrested Mr. Hansel pursuant to a facially valid arrest warrant issued following a probable cause hearing at which Judge Falahee found probable cause to arrest Plaintiff for obstruction. Accordingly, the individual Defendants are entitled to summary judgment on Plaintiff's state law tort claims.

### D. *Plaintiff's Failure to Train Claim Against the County of Jackson*

■ Finally, Plaintiff asserts that the County of Jackson is liable under 42 U.S.C. § 1983 for failing to properly train Deputy Bisard and Sergeant Stellingworth. In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court expressly held that under certain circumstances, a municipality may be held liable under section 1983 for constitutional violations resulting from its failure to train municipal employees. Municipal liability under section 1983 exists, however, only when the municipality itself causes the constitutional violation at issue. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694–695, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978).

In the present case, Plaintiff has failed to establish any deprivation of his constitutional rights. Accordingly, it is unnecessary to reach the merits of Plaintiff's failure to train claim. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 2432–2433, 85 L.Ed.2d 791 (1985); *See also, Mark*, 769 F.2d at 1271 ("The question of whether a municipality caused a constitutional deprivation does not even arise absent proof that a deprivation in fact occurred"). Accordingly, the Court grants summary judgment in favor of Defendant County of Jackson on Plaintiff's failure to train claim.

### V. *CONCLUSION*

For all of the aforementioned reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED in its entirety with prejudice.

---

16. Plaintiff does not allege, and the record contains no evidence, that Deputy Bisard used excessive force during the course of Plaintiff's arrest.