Anthony T. SCOTT, Plaintiff–Appellee,

v.

**CITY OF BEXLEY, James M. Davis, and Robert Cull, Defendants–Appellants,**

**Bexley Police Department, Defendant.**

**No. 00–3193.**

United States Court of Appeals, Sixth Circuit.

May 24, 2001.

Before NORRIS and DAUGHTREY, Circuit Judges; ZATKOFF, District Judge.[*]

---

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

OPINION

NORRIS, Circuit Judge.

Plaintiff Anthony Scott, a Columbus police officer, instituted this civil rights action against two officers of the Bexley, Ohio, police force after they arrested him on domestic violence charges. In addition to the individual defendants, his amended complaint also names the City of Bexley and its police department as party defendants.[1] Although not a model of clarity, the amended complaint alleges that plaintiff was subjected to false arrest, malicious prosecution, and false imprisonment in violation of rights secured by the Fourth, Fifth, and Sixth Amendments to the federal constitution. The district court granted summary judgment to defendants. We now affirm.

## I.

This case arose from a domestic dispute between plaintiff and his former girlfriend, Toya Turner,[2] on Christmas Day, 1996. The couple has two young children and plaintiff wished to visit them at their home to give them their Christmas presents. Apparently, plaintiff and Ms. Turner exchanged telephone calls to try to work out some kind of visit. Eventually, however, a disagreement occurred and she told plaintiff that he could not see his children that day because she was taking them to her mother's home.

Not content with this outcome, plaintiff drove to Ms. Turner's residence and began knocking on the door. Ms. Turner called 911 and the following exchange occurred:

Officer: 911 what is your emergency?

Turner: I got my, uh, children's father down here trying to break in my door.

Officer: Okay, what's he look like?

Turner: Big black, that's all I can tell you.

Officer: How old, how old is he?

Turner: 32.

Officer: And is he at the front door now?

Turner: Yes.

Officer: Okay, stay on the line with me. (inaudible) Port College and Charles ... 7747 Sheridan Avenue, uh, got an unwanted attempting to ... (interrupted by Toya Turner.)

Turner: Stop ... (inaudible) I don't want ... (inaudible) he might start shooting in the fucking, damn door!

Officer: Is he carrying a gun?

Turner: He's a police officer and he does usually have one.

(Toya Turner yelling at children in background: "Go upstairs before he breaks the door down. He's trying to break the door open. Go Seth!")

That's it, I'm going upstairs.

The dispatcher sent a police cruiser to the scene, informing the officers that the "subject" was a black male police officer.

According to defendant James Davis, he arrived on the scene shortly after another Bexley officer, Joseph Wayne. Davis saw plaintiff "on the porch, pounding on the door." After discussing matters with plaintiff, Davis asked him to leave. Plaintiff complied. No charges were filed at the time.

At some point, defendant Sergeant Robert Cull also arrived but left along with plaintiff and Officer Wayne. Davis remained briefly behind and spoke to Ms. Turner in order to write a "domestic dispute report." According to his deposition testimony, "After speaking with her, after

1. The Bexley Police Department has been dismissed without prejudice and is not a party to this appeal.

2. Ms. Turner has since married and is now Toya White.

getting more information is when we started thinking about the possibility that domestic violence had occurred."

Shortly after leaving the Turner residence, Cull and Davis discussed whether probable cause existed to arrest plaintiff under Ohio's domestic violence statute.[3] Among other things, Davis was aware of a "preferred arrest policy" with respect to this statute. Ohio Rev.Code § 2935.03(B)(1). Before deciding anything, however, the two officers returned to Ms. Turner's house, spoke to her briefly about the incident, and told her that at some point they would need a full statement. While there, they obtained Ms. Turner's signature on a blank police report form, which defendant Cull completed later at the station house. According to his deposition, Cull made the decision to arrest plaintiff for domestic violence. He contacted the Columbus Police Department and arranged for plaintiff to surrender.

After his arrest, plaintiff spent Christmas night in the general population of the Franklin County jail. The domestic abuse charges were ultimately dismissed the following May.

The district court granted summary judgment to defendants because it concluded that the officers had probable cause to arrest plaintiff. Since plaintiff's entire theory was premised upon the illegality of his arrest, the court reasoned that all derivative claims, such as an allegation that the City failed to train its officers adequately, must also fail. In reaching its decision, the district court provided the following analysis:

[W]hen a § 1983 claim is predicated on an allegation of false arrest, false imprisonment or malicious prosecution, such claim must fail if probable cause for an arrest exists. That is, "[t]he existence of probable cause for an arrest totally precludes any [§ ]1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff." *Hansel v. Bisard,* 30 F.Supp.2d 981, 985–86 (E.D.Mich.1998) (quoting *Mark v. Furay,* 769 F.2d 1266, 1269 (7th Cir. 1985))....

Probable cause exists where it is shown that, at the moment the arrest was made, the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). When making probable cause determinations, a court must keep in mind that "[t]he Fourth Amendment ... necessitates an inquiry into probabilities, not certainty," *United States v. Strickland,* 144 F.3d 412, 415 (6th Cir.1998), and "probable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *See Criss v. City of Kent,* 867 F.2d 259, 262 (6th

---

3. This statute provides:
    (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
    (B) No person shall recklessly cause serious physical harm to a family or household member.
    (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
    (D) Whoever violates this section is guilty of domestic violence. Except as otherwise provided in this division, a violation of division (C) of this section is a misdemeanor of the fourth degree,....
Ohio Rev.Code § 2919.25.

Cir.1988) (citing *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). "[T]here is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account 'the factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred." *Strickland*, 144 F.3d at 415.

Opinion and Order, January 4, 2000, at 10–11 (citation omitted).

After erecting this legal framework, the district court looked to the undisputed facts to make its determination respecting the existence of probable cause. First, the court noted that Ohio law provides a "preferred arrest" policy in situations that involve domestic violence. OHIO REV.CODE § 2935.03. It then turned to the contents of the 911 call, which made defendant officers aware that 1) a 911 call had been placed; 2) plaintiff had access to a gun as a police officer; 3) Ms. Turner feared that plaintiff might fire the gun; and 4) Ms. Turner thought plaintiff might break her door down. Opinion and Order at 13–14. Furthermore, plaintiff appeared agitated when the officers arrived. The court relied on these considerations to conclude that probable cause existed to justify plaintiff's arrest.

Having decided this critical issue, the court moved on to plaintiff's other claims. It first dismissed liability on the part of the City of Bexley premised on the actions of Sergeant Cull, who plaintiff characterizes as a "policymaker," because Cull "did not violate any of Plaintiff's constitutional rights." Opinion and Order at 17. With respect to plaintiff's claim that the City failed to train its officers adequately, "the Court conclude[d] that the officers had probable cause to arrest Plaintiff and, therefore, no constitutional violations occurred, [so] it need not address the City of Bexley's liability for inadequate training and supervision." Opinion and Order at 18.

The court also determined that plaintiff had failed to state a § 1985 claim because "[p]laintiff fail[ed] to provide sufficient factual allegations to show that Defendants Davis and Cull conspired together or with anyone to deprive Plaintiff of his constitutional rights." Opinion and Order at 21.

Finally, the court declined to assert supplemental jurisdiction over a state-law claim for intentional infliction of emotional distress and dismissed it without prejudice.

In his brief to this court, plaintiff designates six assignments of error. While he does not challenge the dismissal of his § 1985 claim, he does take issue with the district court's disposition of his § 1983 claim against the City of Bexley, as well as the court's refusal to exercise supplemental jurisdiction.

## II.

### A. Standard of Review

This court reviews de novo the district court's order granting summary judgment. *See Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In deciding a summary judgment motion, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Probable Cause

In *United States v. Strickland*, 144 F.3d 412 (6th Cir.1998), this court explained probable cause in these terms:

[W]e start with a few general principles. The most important of these is that the Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect. *See United States v. Barrett*, 890 F.2d 855, 861 (6th Cir.1989). The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty. The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the "factual and practical considerations of everyday life" that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur. *See Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). There is, of course, a requirement that the officers be able to articulate concrete facts from which they infer a probability that illegality has occurred. As we have consistently emphasized, however, while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt. *See, e.g., United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990).

The real question, then, is this: at what point does a body of evidence amassed by a police officer against a particular suspect cross the line from merely raising a suspicion to establishing probable cause? In many respects, this raises a difficult epistemological problem. As Descartes famously observed, to the skeptic, any proposition-no matter how seemingly certain-carries with it a degree of doubt. But judges are not philosophers. To find probable cause, the law does not require that we rule out every conceivable explanation other than a suspect's illegal conduct. Instead, we need only consider whether there are facts that, given the "factual and practical considerations of everyday life," could lead a reasonable person to believe that an illegal act has occurred or is about to occur. *See Gates*, 462 U.S. at 231, 103 S.Ct. 2317.

*Id.* at 415–16 (footnotes omitted); *see also Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (probable cause exists when facts within the knowledge of the officer warrant a prudent person of reasonable caution to believe that the suspect has committed or is about to commit an offense). Generally, the existence of probable cause represents a jury question unless there is only one reasonable determination possible. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995).

Given the standard governing probable cause determinations, we conclude that defendants Davis and Cull had a sufficient factual basis to arrest plaintiff for violating Ohio's domestic violence statute. In addition to the factors cited by the district court, we note that the officers reviewed the tape of the 911 call before arresting plaintiff. According to the contemporaneous report signed by defendant Davis and approved by defendant Cull, the tape revealed that Ms. Turner "sent one of her children upstairs as well as herself for fear that the suspect would shoot through the door." While this information was not known to the officers at the time that they responded to the call and first encountered

plaintiff, it adds greatly to the probable cause calculus because the Ohio domestic violence statute prohibits a person from "knowingly caus[ing] a family or household member to believe that the offender will cause imminent physical harm to the family or household member." OHIO REV.CODE § 2919.25(C). Furthermore, during the period between their original encounter with plaintiff and their decision to arrest him, the officers indicated that they reviewed the preferred arrest policy in cases of suspected domestic violence. Based upon their further investigation of the facts and review of the legal landscape, the officers reached an admittedly difficult decision. However, as already noted, probable cause requires only that the "officers be able to articulate concrete facts from which they infer a probability that illegality has occurred." *Strickland,* 144 F.3d at 415. Under the circumstances, we hold that the undisputed facts support a finding of probable cause.

Because there was no constitutional violation with respect to the arrest of plaintiff, we need not reach the other issues raised by plaintiff for the reasons expressed in the Opinion and Order of the district court.

### III.

The judgment of the district court is affirmed.

ZATKOFF, District Judge.

I must respectfully dissent from the majority's opinion for several reasons. As pointed out in the majority's opinion, "the existence of probable cause ... presents a jury question, unless there is only one reasonable determination possible." *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir.2000) (quoting *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995)). After carefully reviewing the record on appeal, I cannot conclude that "there is only one reasonable determination possible" in this

case. The record shows that the officers on the scene briefly spoke with plaintiff, and then allowed him to leave. Clearly, had the officers believed that probable cause existed while plaintiff was still at the scene, he would have been detained and not allowed to leave. Instead, the officers claim that they had to consider the facts of the situation and review the law concerning domestic violence before determining, several hours later, that probable cause to arrest plaintiff existed. For this reason alone, I believe that the case should have been submitted to a jury because it demonstrates that the officers on the scene had serious concerns about whether probable cause to arrest plaintiff existed.

In addition to the fact that plaintiff was allowed to leave, I am greatly concerned about the information the officers did have at the time the decision to arrest plaintiff was made. The majority's opinion states that "the officers reviewed the tape of the 911 call before arresting plaintiff." A review of the Bexley Police Department Domestic Violence Report, dated December 25, 1996, reveals the following statement: "A check of the 9–1–1 tape later revealed that [Ms. Turner] sent one of her children upstairs as well as herself for fear that the [plaintiff] would shoot through the door." Although the Domestic Violence Report unequivocally states that the tape of the 911 call was reviewed, I believe there are reasons to question the veracity of the report. Directly above Ms. Turner's signature on the report it states: "THIS REPORT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE." However, Ms. Turner's deposition testimony states that at the time she signed the report, it was blank. The Bexley Chief of Police, John Carruthers, testified during his deposition that he was aware that Ms. Turner had signed a blank report and that this was "not appropriate."

Further, although the Domestic Violence Report states that the tape of the 911 call was reviewed prior to plaintiff's arrest, nowhere in Officer Davis's deposition testimony or Sergeant Cull's deposition testimony does it state that they listened to the 911 tape prior to plaintiff's arrest. Given the above-described irregularity with the signature on the blank report and the fact that the record does not demonstrate that either Officer Davis or Sergeant Cull listened to the tape of the 911 call.[1] I believe that there are sufficient questions concerning whether probable cause to arrest plaintiff existed, and as such, the matter should be submitted to a jury.

In addition to these issues, I have a concern with the use of the "preferred arrest policy" in this case. The Ohio statute containing the "preferred arrest policy" states as follows:

If ... a peace officer has reasonable grounds to believe that the offense of domestic violence ... has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, *it is the preferred course of action in this state that the officer arrest and detain that person* ... until a warrant can be obtained.

OHIO REV.CODE § 2935.03(B)(3)(b). Further, a peace officer can have "reasonable grounds" if a person executes a written statement that another person has committed domestic violence, if the peace officer witnesses an act of domestic violence, or if:

No written statement of the type described in division (B)(3)(a)(i) of this section is executed, but the peace officer, based upon the peace officer's own knowledge and observation of the facts and circumstances of the alleged incident of the offense of domestic violence or the alleged incident of the offense of

violating a protection order or based upon any other information, including, but not limited to, any reasonably trustworthy information given to the peace officer by the alleged victim of the alleged incident of the offense or any witness of the alleged incident of the offense, concludes that there are reasonable grounds to believe that the offense of domestic violence or the offense of violating a protection order has been committed and reasonable cause to believe that the person in question is guilty of committing the offense.

OHIO REV.CODE § 2935.03(B)(3)(a). A review of the above-quoted section indicates that the requirements for probable cause, which are set forth in the majority's opinion, are quite similar to the requirements for "reasonable grounds" under OHIO REV. CODE § 2935.03(B)(3)(a).

Returning to the "preferred arrest policy," I believe that it has been improperly applied in the present case. Again, OHIO REV.CODE § 2935.03(B)(3)(b) states that once an officer has "reasonable grounds to believe that the offense of domestic violence ... has been committed and reasonable cause to believe that a particular person is guilty of committing the offense" the preferred course of action is to arrest the suspect. However, in the present case, it appears that the majority has allowed the "preferred arrest policy" to enter into the probable cause calculus. While buttressing its argument that probable cause to arrest plaintiff existed in the present case, the majority states that "during the period between their original encounter with plaintiff and their decision to arrest him, the officers indicated that they reviewed the preferred arrest policy in cases of suspected domestic violence." The fact that

---

**1.** The only mention of the officers reviewing the tape of the 911 call was contained in the Domestic Violence Report. However, this report was not contained in the Joint Appendix; instead, it was attached to plaintiff's brief on appeal.

Ohio has a "preferred arrest policy," which the officers reviewed before arresting plaintiff is of no significance in determining whether probable cause existed at the time of plaintiff's arrest. This is because Ohio law requires that "reasonable grounds" must exist first. If "reasonable grounds" are found to exist, then it is the preferred policy to arrest. I believe that allowing the "preferred arrest policy" to be considered when determining whether probable cause exists is improper under Ohio law.

As a final matter, I would note that in plaintiff's deposition testimony, he stated that during the night he was incarcerated, he was jailed with a member of the Short North Posse, a gang which is known for violence and drug-related activity. *See United States v. Gibbs,* 182 F.3d 408, 418, 420 (6th Cir.1999); *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1059, 1063 (6th Cir.1998); *State v. Needum,* No. 99–AP– 1371, 2000 WL 861334, at *1 (Ohio Ct.App. Jun 29, 2000). Although plaintiff was incarcerated in the Franklin County jail and not the City of Bexley's jail, I believe that placing plaintiff, a narcotics detective, in a jail cell with such a gang member demonstrates just another irregularity with the present case.

In sum, I believe that the facts of the present case are simply too close to have been disposed of on summary judgment and the matter should have been submitted to a jury to decide. Therefore, for the reasons stated above, I respectfully dissent from the majority's opinion.