**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 27, 2001**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                             No. 116660

MARK JOHN VASQUEZ, JR.,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to consider whether defendant's alleged conduct of lying to a police officer about his name and age, constituted an "obstruction" within the meaning of Michigan's "resisting and obstructing" statute. MCL 750.479. Michigan's "resisting and obstructing" statute does not proscribe *any* manner of interference with a police officer, and it also does

not proscribe *only* conduct that poses a threat to the safety of police officers; rather, it proscribes threatened, either expressly or impliedly, physical interference and actual physical interference with a police officer. Therefore, we would reverse the decision of the Court of Appeals and reinstate the trial court's order dismissing the charge against defendant.

## I.  FACTS AND PROCEDURAL HISTORY

While investigating a complaint about a loud party, a police officer found defendant urinating on the front lawn of a private residence. The officer approached defendant and asked him whether he had been drinking alcohol. Defendant responded, "Yes, but not very much." The officer suspected that defendant was an intoxicated minor. When the officer asked defendant his name and age, defendant said that his name was "John Wesley Chippeway" and that he was sixteen years old. In fact, defendant's name was Mark John Vasquez, Jr., and he was seventeen years old.

The officer arrested defendant for being a minor in possession of alcohol. MCL 436.1703(1). During the booking process, the officer learned from another officer, who recognized defendant, that he was actually Mark John Vasquez, Jr. When confronted about the officer's knowledge of who he actually was, he admitted his true name and age.

2

The prosecutor charged defendant with being a minor in possession—second offense and "resisting and obstructing" a police officer. The trial court quashed the "resisting and obstructing" charge, relying on *People v Philabaun*, 234 Mich App 471; 595 NW2d 502 (1999)(*Philabaun I*), which this Court subsequently reversed, 461 Mich 255; 602 NW2d 371 (1999) (*Philabaun II*). The Court of Appeals thereafter reversed and remanded, 240 Mich App 239; 612 NW2d 162 (2000), relying on our decision in *Philabaun II*, that a defendant's mere refusal to obey an order for a blood sample could constitute resisting or opposing.

## II. STANDARD OF REVIEW

This case requires us to construe Michigan's "resisting and obstructing" statute. Questions of statutory construction are reviewed de novo. Donajkowski *v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

## III. ANALYSIS OF STATUTE

"The primary goal of judicial interpretation is to ascertain and give effect to the intent of the Legislature." *McJunkin v Cellasto Plastic Corp*, 461 Mich 590, 598; 608 NW2d 57 (2000). "The first step in that determination is to review the language of the statute itself." *In re MCI*

3

*Telecommunications*, 460 Mich 396, 411; 596 NW2d 164 (1999).

The "resisting and obstructing" statute states in relevant part:

> Any person who shall knowingly and willfully . . . obstruct, resist, oppose, assault, beat or wound . . . any person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace shall be guilty of a misdemeanor . . . . [MCL 750.479.]

This statute proscribes conduct that "obstruct[s]" a police officer while the officer is attempting to "keep the peace."

### A. "Keep the Peace"

The "resisting and obstructing" statute proscribes certain conduct encountered by a law enforcement officer while the officer is attempting to "keep the peace." Therefore, the first issue is whether the police officer, in this case, was attempting to "keep the peace" when defendant lied to him. "[A]n officer's efforts to 'keep the peace' include ordinary police functions that do not directly involve placing a person under arrest." *People v Little*, 434 Mich 752, 759; 456 NW2d 237 (1990). "[T]he broad statutory clause 'maintain, preserve and keep the peace' includes all of the duties legally executed by a police officer." *People v Weatherspoon*, 6 Mich App 229, 232; 148 NW2d 889 (1967).

In this case, the officer was responding to a complaint about a loud party when he found defendant urinating on the

4

front lawn of a private residence. Because the officer suspected that defendant was an intoxicated minor, the officer asked defendant for his name and age. Defendant told the officer that his name was "John Wesley Chippeway" and that he was sixteen years old. In fact, defendant's name was Mark John Vasquez, Jr. and he was seventeen years old. Defendant was arrested for being a minor in possession of alcohol. MCL 436.1703(1). It is clear that, at the time defendant lied to the officer, the latter was responding to suspected criminal activity, which constitutes an ordinary police function. Because the officer was performing such a lawfully assigned function when he questioned defendant, the officer was attempting to "keep the peace" within the meaning of the "resisting and obstructing" statute, when defendant lied to him.

### B. "OBSTRUCT"

The next issue is whether defendant "obstructed," within the meaning of the "resisting and obstructing" statute, the police officer when he lied to him. "[T]he meaning of statutory language, plain or not, depends on context." *King v St Vincent's Hosp*, 502 US 215, 221; 112 S Ct 570; 116 L Ed 2d 578 (1991). "Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: '[i]t is known from its associates,' see Black's Law Dictionary (6th

ed), at 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting." *Tyler v Livonia Pub Schs*, 459 Mich 382, 390-391; 590 NW2d 560 (1999). "[I]n seeking meaning, words and clauses will not be divorced from those which precede and those which follow." *Sanchick v Michigan State Bd of Optometry*, 342 Mich 555, 559; 70 NW2d 757 (1955). "It is a familiar principle of statutory construction that words grouped in a list should be given related meaning." *Third Nat'l Bank in Nashville v Impac Ltd, Inc*, 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977).

In the present case, the statute uses the word "obstruct" as part of a list containing five other words, namely, "resist, oppose, assault, beat [and] wound." The meaning of the word "obstruct" should be determined in this particular context, and be given a meaning logically related to the five surrounding words of the statute. "Resist" is defined as "to withstand, strive against, or oppose." *Random House Webster's College Dictionary* (1991) at 1146. "Resistance" is additionally defined as "the opposition offered by one thing, force, etc." *Id.* "Oppose" is defined as "to act against or furnish resistance to; combat" *Id.* at 949. "Assault" is defined as "a sudden violent attack; onslaught." *Id.* at 82. "Beat" is defined as "to strike forcefully and repeatedly; . . . to hit repeatedly as to cause painful injury." *Id.* at

6

120. "Wound" is defined as "to inflict a wound upon; injure; hurt." *Id*. at 1537. Each of these words, when read together, clearly implies an element of threatened or actual *physical* interference.

The accompanying term "obstruct" is susceptible to several potential meanings. "Obstruct" is defined as: "1. to block or close up with an obstacle. 2. to hinder, interrupt, or delay the passage, progress, course, etc. of. 3. to block from sight; be in the way of (a view, passage, etc.)." *Id*. at 935. Accordingly, we understand the dissent's definition of "obstruct," which defines it as including both physical and nonphysical conduct. Although we understand that "obstruct" can be defined in such a manner, *when read in context*, we believe that the more reasonable interpretation is one that communicates an actual, or a threat of, physical interference.[1]

---

[1] An Iowa statute, very similar to Michigan's "resisting and obstructing" statute, provides:

> A person who knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . commits a simple misdemeanor. [Iowa Code § 719.1.]

The Iowa Supreme Court has said "[t]he language of section 719.1 was chosen because it conveys the idea of *active* interference, with the drafting committee rejecting more passive language such as 'object' or 'fail to cooperate.'"

(continued...)

7

The words "assault, beat, or wound" necessarily contain an element of violence; whereas, the words "obstruct, resist [or] oppose" may, but do not necessarily, contain an element of violence. For example, one cannot "assault, beat, or wound" an officer without being violent; however, one can "obstruct, resist, [or] oppose" an officer without necessarily being violent. What this leads us to believe is that when the Legislature used these six words together, it intended to proscribe both violent and nonviolent physical interference; physical interference being the only element common to all six words. Therefore, by grouping these six words together as a part of a single type of prohibited conduct, the Legislature has demonstrated a purpose of proscribing conduct amounting to actual or threatened physical interference.[2] In this case,

---

[1](...continued)
*Iowa v Smithson*, 594 NW2d 1, 2 (Iowa, 1999), quoting Yeager & Carlson, *Criminal Law & Procedure*, § 422 (Supp 1998)(emphasis added). Therefore, the mere act of providing false information to a police officer does not amount to a violation of this statute. *Iowa v Henley*, 2001 WL 57994 (Iowa App, 2001).

[2] The dissent asserts that "the fact that the word 'obstruct' later appears with the words 'assault, beat, or wound' should not be given any special significance," *post* at 8, because "[a]t the beginning of the statute, regarding the service of process, the words 'obstruct, resist, or oppose' are specifically set apart from the words 'assault, beat, or wound.'" *Id.* at 7. We respectfully disagree. Rather, that the Legislature initially separated the six terms into two groups in the statute does suggest that the two groups of
(continued...)

8

defendant's conduct did not constitute threatened or actual physical interference. Defendant instead lied to the officer about his name and age. While certainly not laudatory, defendant's conduct did not physically interfere with or threaten to physically interfere with the officer.[3]

---

[2](...continued)
words have a distinct meaning. This distinction is that the words "obstruct, resist, [and] oppose," refer to nonviolent physical interference; while, the words "assault, beat, [and] wound" refer to violent physical interference. However, the fact that the Legislature then combined the two sets of words, in the portion of the statute that we are interpreting here, suggests that it is referring to both violent and nonviolent physical interference, with physical interference being the only element *common* to both sets of words.

Further, in our judgment, the Legislature used six verbs in the "resisting and obstructing" statute, not to prohibit six discrete forms of conduct, but rather to prohibit one general category of conduct in as thorough a manner as possible, by ensuring that there were no obvious gaps that could be exploited in the statute. Therefore, we must interpret each of the six words by looking at them together in order to determine the general category of conduct that the Legislature intended to prohibit.

[3] The dissent asserts "[w]hen asked to provide his name and age, defendant had two lawful choices: he could have answered truthfully or exercised his constitutional right not to answer at all. Instead, defendant chose to lie. By doing so, he impeded the officer's investigation by creating a nonphysical obstacle to the officer's attempt to gather accurate information." *Post* at 6. Under the dissent's reasoning, if defendant had refused to answer *at all*, he could also have been charged under the "resisting and obstructing" statute. If defendant had refused to answer, this would have also "impeded the officer's investigation by creating a nonphysical obstacle to the officer's attempt to gather accurate information." However, one cannot be compelled to answer questions posed by a police officer. *Davis v Mississippi*, 394 US 721, 727, n 6; 89 S Ct 1394; 22 L Ed 2d
(continued...)

9

Moreover, the principal "purpose of [the "resisting and obstructing" statute] is to protect officers from physical harm." *Philabaun II, supra*, at 262, n 17. "The purpose of the resisting arrest statute is to protect persons (the officers) from physical violence and harm." *People v Kretchmer*, 404 Mich 59, 64; 272 NW2d 558 (1978). The statute "attempts to punish an assault upon an officer while in the discharge of his duty by a penalty more severe than that imposed for other assaults," i.e., assaults on private citizens.[4] *People v Tompkins*, 121 Mich 431, 432; 80 NW 126

---

[3](...continued)
676 (1969); *Risbridger v Connelly*, 122 F Supp 2d 857, 866 (WD Mich, 2000)(holding that a police officer cannot compel one to disclose one's identity); *People v Burrell*, 417 Mich 439, 458; 339 NW2d 403 (1983). Therefore, one cannot be prosecuted for "obstructing" a police officer on the basis of one's refusal to answer questions. *City of Pontiac v Baldwin*, 163 Mich App 147, 152; 413 NW2d 689 (1987). The dissent asserts that a defendant does not "obstruct" a police officer by refusing to answer questions posed by an officer. However, the dissent concludes that when one hinders or impedes an investigation, one violates the "resisting and obstructing" statute. Perhaps the dissent is willing to make an exception where one merely refuses to speak, but that does not change the fact that under the dissent's *reasoning*, one who merely refuses to speak violates the "resisting and obstructing" statute because such conduct may obviously hinder or impede an investigation and that is exactly the type of conduct that the dissent argues is proscribed by this statute. In our judgment, a reasoning that leads to the conclusion that one may violate a statute by exercising a constitutional right is problematic, even though one is prepared to make an exception for constitutionally protected conduct.

[4] Not only is the purpose of this statute to punish assaults upon officers more severely than assaults upon
(continued...)

10

(1899).    In our judgment, defendant's conduct, i.e., the

_____

[4](...continued)
private citizens, but it is also to punish physical interferences with officers more severely than nonphysical interferences with officers.  This is evidenced by the differences in punishments in the law placed upon physical and nonphysical interferences with officers.  The punishment for violation of MCL 750.479 (proscription of physical interferences) is "imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars."  MCL 257.324(1), in contrast, provides in relevant part:

> A person shall not do any of the following:
>
> (h) Furnish to a peace officer false, forged, fictitious, or misleading verbal or written information identifying the person as another person, if the person is detained for a violation of [the motor vehicle code] . . . .

The punishment for violation of this statute (proscription of nonphysical interferences) is suspension of driver's license for ninety days.  Similarly, MCL 750.217 provides:

> Any person who shall in any manner disguise himself, with intent to obstruct the due execution of the law, or with intent to intimidate, hinder or interrupt any officer or any other person, in the legal performance of his duty, or the exercise of his rights under the constitution and laws of this state, whether such intent be effected or not, shall be guilty of a misdemeanor . . . .

The punishment for violation of MCL 750.217 (proscription of nonphysical interferences) is "imprisonment in the county jail not more than 1 year or by fine of not more than 500 dollars."  Thus, the punishment for "resisting and obstructing" an officer is far more severe than the punishment for lying to an officer while detained for a violation of the motor vehicle code or the punishment for disguising one's self to an officer.  When MCL 750.479 is read in the context of these two statutes, specifically the types of punishments attached to each, it is increasingly evident that the purpose of MCL 750.479 is to punish physical interferences with police officers.

11

giving of a false name and age to an officer, does not fit within the range of conduct that MCL 750.479 was meant to prohibit.

It is clear that the principal purpose of this statute is to protect police officers from harm. However, from its language, we do not believe that this is the *only* purpose. Because one may threaten to or actually physically interfere with a police officer without threatening to or actually hurting a police officer, we believe that one may physically "obstruct" an officer without necessarily posing a threat to the officer's safety. For example, one may "obstruct" an officer by placing an object in the way of the officer with the intent of making it less accessible to the officer. This may pose no real threat to the officer's safety, but it may nevertheless "obstruct" because of the physical barrier interposed to the officer's performance of his duties. Therefore, both physical interference that poses a threat to the safety of police officers ("assault, beat, or wound") *and* physical interference that does not necessarily, but nevertheless may, pose a threat to the safety of police officers ("obstruct, resist, [or] oppose") are proscribed.

If the Legislature had intended to proscribe *any* manner of interference with a police officer, as the dissent asserts,

12

why did the Legislature not clearly express this intent?[5]  If the Legislature intended to proscribe nonphysical forms of "obstruction," it could have used such terms as "lies," "falsifies," "refuses to cooperate," "interferes with" or "objects to."  It did not.[6]  Instead, the Legislature chose

---

[5] **For example, the federal statute, 18 USC 1001, provides, in relevant part:**

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title or imprisoned not more than 5 years, or both.

This statutory language clearly proscribes the giving of a false statement to a police officer. *Brogan v United States*, 522 US 398, 400; 118 S Ct 805; 139 L Ed 2d 830 (1998).  If Michigan had a similar statute, clearly defendant could be charged under such a statute.  However, for whatever reasons, Michigan has no such statute, and MCL 750.479 cannot reasonably be interpreted by this Court to fill that void.  Rather, if giving false information to the police is to become an offense, it is for our Legislature to say so.

[6] The dissent contends that "our job is to interpret the meaning of the plain language of the words *actually used* by the Legislature." *Post* at 10 (emphasis added). We agree, and
(continued...)

13

six words that, when read together, evidence an intent to proscribe only threatened or actual physical interference.

Indeed, the fact that the Legislature used *six* separate terms to describe the types of conduct that it sought to proscribe, makes it even more probable that, had the Legislature truly intended to proscribe "lying" to a police officer, it would have expressly included such a term in its litany.[7] That is, to the extent that the Legislature sought to proscribe the types of conduct that the dissent attributes to the statute, what more *obvious* starting point could there have been than to prohibit "lying?" Why, in light of its laundry list of proscribed activities, its literal thesaurus of forms of misconduct, would the Legislature have been so cryptic in setting forth such an obvious form of wrongdoing as "lying"? After all, "lying" is something more than an obscure verb describing an abstruse form of misconduct; rather, it

---

[6](...continued)
that is exactly what we are doing here. We are merely attempting to interpret reasonably the meaning of the words "obstruct, resist, oppose, assault, beat, or wound" as used in the statute. In this process, we are simply not prepared to insert the word "lies" into the statute.

[7] Although we fully concur with the dissent that "lying to a police officer during an investigation could have grave consequences," *post* at 6, n 3, MCL 750.479 simply does not proscribe such conduct. Just as it is Congress' responsibility to address this issue in the context of federal law, see note 5, it is the responsibility of the Legislature to insert "lying" into MCL 750.479.

describes a form of misconduct that, by itself, has been made the subject of numerous significant criminal statutes, including, for example, those described in notes 4 and 5.[8]

Our opinion is consistent with *Philabaun II*, where we concluded that the defendant's refusal to comply with a search warrant for a blood sample constituted an obstruction under Michigan's "resisting and obstructing" statute. "[D]efendant's conduct, although indisputably passive in nature, was nevertheless sufficient to constitute obstruction, resistance, or opposition to the deputy's execution of the search warrant for the extraction of defendant's blood." *Philabaun II, supra* at 264, quoting *Philabaun I, supra*, at 488-489(Murphy, J., dissenting). In reaching this conclusion, we stated:

> Although the classic example of resisting or obstructing involves a defendant who physically interferes with the officer, actual physical interference is not necessary because case law instructs that an expressed threat of physical interference, absent actual physical interference, is sufficient to support a charge under the statute. And while an expressed threat of physical interference with an officer is sufficient to

---

[8] The dissent misunderstands our point here. We are not implying that the prosecutor could have charged defendant under these other statutes. We agree that these other statutes are inapplicable in this case. Our point is merely that, because the Legislature has specifically proscribed "lying" in various other significant statutes, it is even more likely that, had it truly intended to proscribe "lying" in this statute, it would have specifically done this as it has done in these other statutes.

15

support a charge under the statute, such a threat is not necessary because this Court has held that a constant barrage of obscene and abusive remarks to an officer, taken together with the refusal to comply with the officer's orders, is sufficient to warrant a charge under the statute. [*Philabaun II*, *supra* at 263, quoting *Philabaun I*, *supra* at 488 (Murphy, J., dissenting)(citations omitted).]

We agree with *Philabaun II* that passive conduct may sometimes be sufficient to constitute obstruction under the "resisting and obstructing" statute. Passive conduct, if it rises to the level of *threatened* physical interference, constitutes "obstruction" within the meaning of the statute. For example, in *Philabaun II*, the defendant's refusal to comply with the search warrant, although passive conduct, rose to the level of threatened physical interference because the officers were placed in a situation in which, in order to get a sample of the defendant's blood, they would have had to physically constrain him and take his blood against his will. When the defendant refused to cooperate, the next likely sequence of events very well could have been the possible injury of a police officer attempting to enforce the search warrant.

We also agree with *Philabaun II* that *actual* physical interference is unnecessary to support a charge under the "resisting and obstructing" statute. Rather, conduct that rises to the level of *threatened* physical interference is

sufficient to support a charge under the statute. Additionally, we agree that an *expressed* threat of physical interference is unnecessary to support a charge under the statute. Rather, *any* conduct that rises to the level of threatened physical interference, whether it is expressed or not, is sufficient to support a charge under the statute. For example, in *Philabaun II*, the defendant's refusal to comply with the search warrant, although not an express threat of physical interference, was sufficient to support a charge under the statute because by refusing to cooperate, defendant was, in effect, physically interfering with the police officers; his refusal left the officers with no other choice than to use physical force to execute the search warrant.

In the present case, unlike *Philabaun II*, the police officer was not faced with a situation in which his next act would, more likely than not, involve physical confrontation. Defendant did not physically obstruct or resist the officer in any way. He instead lied to the officer about his name and age.[9] This is not the type of conduct that Michigan's

---

[9] The following cases are illustrative of cases in which defendants supplied false information to police officers and courts subsequently held that there was insufficient evidence to find the defendants guilty of violating statutes that proscribe obstructing an officer: *Louisiana v Daigle*, 701 So 2d 685 (La App, 1997)(the defendant falsely told the police that a woman was not present, when, in fact, she was); *Pennsylvania v Shelly,* 703 A2d 499 (Pa Super, 1997)(the
(continued...)

17

"resisting and obstructing" statute was intended to proscribe.[10]

---

[9](...continued)
defendant gave a false name to a police officer); *Steele v Florida,* 537 So 2d 711 (Fla App, 1989)(the defendant gave a false name to a police officer); *Louisiana v Smith*, 352 So 2d 216 (La, 1977)(the defendant falsely told a police officer that her son, who was wanted for armed robbery, was not in the house, when, in fact, he was); *Ohio v Stephens*, 57 Ohio App 2d 229; 387 NE2d 252 (1978)(the defendant falsely told police officers that she did not know a person, who subsequently was found in defendant's basement); *Wilbourn v Mississippi*, 249 Miss 835; 164 So 2d 424 (1964)(the defendant gave a false description of the man who shot her husband, when, in fact, her son shot her husband).

[10] *Even if one were to accept the dissent's proposition*, that the statute proscribes *any* interference with a police officer while he is attempting to "keep the peace," one may still reasonably question whether defendant's lies, in fact, "obstructed" the officer in "keeping the peace" in this case. Although, for example, defendant gave the officer a false age, defendant nevertheless gave him an age that *still* made defendant a minor. Therefore, even though the information was false, it could hardly have prevented the officer from arresting defendant for being a minor in possession. Additionally, the majority does not identify any actual "obstruction" that occurred in this case as a result of defendant supplying the officer with a false name. It did not cause any apparent delay in processing the charge against defendant, nor did it lead to any charge being wrongfully pursued against any innocent persons. While such an "obstruction" is, of course, conceivable, it simply did not occur here.

Michigan's "resisting and obstructing" statute provides that "[a]ny person who *shall* . . . obstruct . . . shall be guilty of a misdemeanor . . . . (emphasis added). Accordingly, one may commit obstruction of a police officer only by *actually* obstructing a police officer, rather than by merely *attempting* to obstruct an officer. See *id*. at 274; see also *In re McConnell*, 370 US 230, 233-234; 82 S Ct 1288; 8 L Ed 2d 434 (1962)(holding that a statute authorizing federal courts to punish "misbehavior of any person in its presence or
(continued...)

18

## IV. Conclusion

An officer's attempts to "maintain, preserve and keep the peace" under MCL 750.479 encompass the execution of all lawfully assigned duties of a law enforcement officer. In the present case, the police officer was attempting to "keep the peace" when defendant lied to him, because the officer was legally executing one of his duties when he questioned defendant. Under the plain meaning of MCL 750.479, conduct that rises to the level of threatened or actual *physical* interference is proscribed. Michigan's "resisting and obstructing" statute does not proscribe *any* manner of interference with a police officer, and it also does not proscribe *only* conduct that poses a threat to the safety of police officers; rather, it proscribes threatened, either expressly or impliedly, physical interference and actual physical interference with a police officer. Defendant's conduct did not constitute threatened or actual physical

---

[10](...continued)
so near thereto as to obstruct the administration of justice" requires an *actual* obstruction of the administration of justice) (emphasis added); *Ohio v Wilson*, 101 Ohio Misc 2d 43; 721 NE2d 521 (1999)(holding that a false statement made to a police officer does not violate a statute prohibiting the obstruction of official business unless the officer is *actually* hampered in some substantial way)(citing *Ohio v Stephens*, *supra* at 230) (emphasis added). Therefore, *even if one were to accept the dissent's proposition*, that the statute proscribes *any* interference with a police officer, defendant, at the most, *attempted* to "obstruct" the officer.

19

interference.  Therefore, defendant did not "obstruct" the police officer, within the meaning of MCL 750.479, when he lied to him.  Accordingly, we would reverse the decision of the Court of Appeals and reinstate the trial court's order dismissing the charges against defendant.[11]

CAVANAGH and TAYLOR, JJ., concurred with MARKMAN, J.

---

[11] In Justice Kelly's separate opinion, she agrees with the conclusion set forth here that defendant's conduct did not "obstruct" the officer within the meaning of MCL 750.479.  She further agrees that this statute does not proscribe *any* manner of interference with police officers; rather, it only proscribes threatened or actual physical interference with police officers.

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                      No. 116660

MARK JOHN VASQUEZ, JR.,

    Defendant-Appellant.
_____

BEFORE THE ENTIRE BENCH

KELLY, J.

    Mark John Vasquez, Jr., lied about his age and identity to a policeman and, as a consequence, was charged with resisting and obstructing a police officer. MCL 750.479. The trial court quashed the charge on the ground that the lies did not constitute an "obstruction" within the meaning of the statute. The Court of Appeals reversed and remanded. 240 Mich App 239; 612 NW2d 162 (2000).

    We granted leave to interpret the meaning of "obstruct" and "keep the peace" as those terms were used by the Legislature in § 479. Our primary task is to interpret the

term "obstruct" to determine the scope of actions the statute was intended to penalize. We would hold that the statute proscribes acts of interference that physically hinder a police officer's efforts to keep the peace or that threaten to hinder them. Defendant's lies did not violate the statute. Hence, the decision of the Court of Appeals should be reversed.[1]

## BACKGROUND

In the early morning hours of May 1, 1999, Michigan State Police Trooper Stephen Spinner investigated a complaint about a loud party in Union Township, Isabella County. Arriving at the residence where the party was being held, the trooper encountered defendant urinating on the front lawn. He approached and asked defendant whether he had been drinking. Defendant responded, "Yes, but not very much." Spinner observed that his eyes were bloodshot and watery and noticed a strong odor of intoxicants on defendant's breath.

Spinner requested identification. Defendant said that his name was "John Wesley Chippeway" and that he was sixteen years old. Spinner took defendant into custody and started booking him on charges of minor in possession. MCL

---

[1]Defendant raised an alternative argument in the Court of Appeals that § 479 was impermissibly vague and therefore unconstitutional. He has not pursued that issue. Accordingly, we do not treat it here.

436.1703(1). During the booking process, other officers recognized defendant as Mark John Vasquez, Jr. When confronted with the apparent false identification, defendant admitted his true identity and age.

Authorities then fingerprinted him and administered a preliminary Breathalyzer test that showed legal intoxication. The Isabella County prosecutor charged defendant with being a minor in possession-second offense, and with resisting and obstructing a police officer in violation of § 479.

Section 479 provides:

> Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or attempted to serve or execute the same, *or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers*, or any other person or persons authorized by law to maintain and preserve the peace, *in their lawful acts, attempts and efforts to maintain, preserve and keep the peace*, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars. [Emphasis added.]

Defendant moved to quash the resisting and obstructing charge. In addressing the motion, the trial court analyzed the statute and reasoned that Vasquez' lies did not create the kind of "obstruction" that the statute contemplated.

The court gave the terms of the statute their "ordinary usage." It noted that the statute required the obstruction to occur while the officer was "maintaining or preserving the peace." Thus, since defendant's lies did not hinder the progress of determining whether defendant had been drinking, they "did not obstruct the actions required of the officer to maintain the peace under a totality of the circumstances in this case."[2]

Before the Court of Appeals decided *Vasquez*, we reversed the decision in *Philabaun I*. See *People v Philabaun*, 461 Mich 255; 602 NW2d 371 (1999) (*Philabaun II*). In *Philabaun II*, we held that the defendant had violated § 479 by resisting the officer's attempt to execute a search warrant. Moreover, we

---

[2]The court relied on the Court of Appeals opinion in *People v Philabaun*, 234 Mich App 471; 595 NW2d 502 (1999) *(Philabaun I)*. At issue in *Philabaun* was whether the defendant's refusal to permit the police to execute a search warrant by obtaining a blood sample was resisting and obstructing under the statute. The defendant did not "physically resist" the police officer. The Court of Appeals majority in *Philabaun I* found that the defendant's passive refusal to submit to a blood test did not constitute an offense under the statute. The trial court likened Vasquez' conduct to that operating in *Philabaun*, noting the absence of "affirmative action taken against the trooper which would have been threatening to public safety."

observed that a defendant could violate the statute without engaging in a physical altercation with the officer.

We concluded that the purpose of the statute is to protect officers from physical harm. See *Philabaun II*, *supra* at 262, n 17, citing *People v Kretchmer*, 404 Mich 59, 64; 272 NW2d 558 (1978). We also concluded that determinations whether specific conduct falls within the statute should be made on a case-by-case basis. See *Philabaun II, supra* at 263-264.

The Court of Appeals relied on *Philabaun II* to support its finding that Vasquez' verbal acts were violations of the statute, despite the absence of physical obstruction or resistance on his part. From the language and holding of *Philabaun II*, the Court of Appeals discerned and applied the following test:

> [A] prosecutor must support a [charge under § 479] with competent evidence showing that there is probable cause to believe that (1) the conduct alleged, whether active or passive, obstructed, resisted, or opposed (2) any of the listed officials (3) in their described duties and (4) the alleged conduct was done knowingly and wilfully. [240 Mich App 244.]

It concluded that the evidence tended to show that Vasquez knowingly lied to Spinner about his name and age. Vasquez' conduct, while passive, "suggested that [he] wished to prevent the State Police from instituting any legal action against him as an individual and would actually hinder law

5

enforcement agents from taking action against him, which fits under the broad definitions of restricting, obstructing, or opposing." 240 Mich App 245. The Court of Appeals continued:

> We see a marked similarity between the effect of saying "no" to a police request, as in *Philabaun*, and giving false and misleading information in response to a similar request by a State Police trooper; both responses presented an obstacle to the investigating law enforcement agent's attempt to discharge his legal duties. [*Id.* at 245.]

Therefore, the Court of Appeals concluded, Vasquez' act of lying to Spinner fell within the coverage of § 479.

<h2 align="center">STANDARD OF REVIEW</h2>

This case involves a question of statutory interpretation, which we review de novo. *Genesee Co Friend of the Court v General Motors Corp*, 464 Mich ___; ___ NW2d ___ (2001); *Brown v Michigan Health Care Corp*, 463 Mich 368, 374; 617 NW2d 301 (2000).

<h2 align="center">DISCUSSION</h2>

The question presented is whether the lies that Vasquez told constitute conduct that the statute was intended to penalize. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mutual Ins v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998); *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999). The first criterion in determining intent is the specific language of the statute.

6

*In re MCI Telecommunications Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999); *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999).

The language is sometimes given meaning by context or setting. *Consumers Power Co v Pub Serv Comm*, 460 Mich 148, 163, n 10; 596 NW2d 126 (1999); *Tyler v Livonia Pub Schs*, 459 Mich 382, 391; 590 NW2d 560 (1999). As we interpret it, we keep in mind the subject matter and purpose of the act. *In re Wirsing*, 456 Mich 467, 474; 573 NW2d 51 (1998); *People v Seeburger*, 225 Mich App 385, 391; 571 NW2d 724 (1997).

### "Keep the Peace"

The wording of § 479 indicates that it applies to conduct encountered by a law enforcement officer while attempting to "maintain, preserve and keep the peace." Thus, to apply the statute, we must gain an understanding of what it means to "keep the peace."

The phrase originated under the common laws of England and referred to the "king's peace." It related to the general duties assigned to justices of the peace, first instituted in England by King Edward III in 1326. *People v McLean*, 68 Mich 480, 482; 36 NW 231 (1888), citing 1 Steph Crim Law, 190. The justices were "assigned to keep the peace" and, by order of the king, empowered "to take and arrest all those they may find by indictment or suspicion, and put them in prison." *Id.*

7

Thus, the common-law duties of English justices of the peace resemble those associated with modern-day law enforcement officers.

Black's Law Dictionary defines "keeping the peace" as "[a]voiding a breach of the peace; dissuading or preventing others from breaking the peace." Black's Law Dictionary, 6th ed (1991). Breach of the Peace, in turn, was a criminal offense at common law. In 1884, in *Davis v Burgess*,[3] this Court set forth a commonly accepted definition for "breach of the peace":

> Now, what is understood by "a breach of the peace?" By "peace," as used in the law in this connection, is meant the tranquillity enjoyed by citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in a political society, and any intentional violation of that right is "a breach of the peace." It is the offense of disturbing the public peace, or violation of public order or public decorum.

Similarly, in *People v Johnson*,[4] this Court described "breaking the peace" as "any act or conduct inciting to violence, or tending to provoke or excite others to break the peace."

Absent statutory provisions or internal definitions to the contrary, we must interpret the language of a statute in

_____

[3]54 Mich 514, 517; 20 NW 540 (1884).

[4]86 Mich 175, 177; 48 NW 870 (1891).

8

light of previously established rules of common law. We give those words that acquired unique meaning at common law the same meaning when used in a statute dealing with the same subject. *Nummer v Dep't of Treasury*, 448 Mich 534, 544; 533 NW2d 250 (1995); *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994); *People v Young*, 418 Mich 1, 13; 340 NW2d 805 (1983). Therefore, we read the statutory phrase "maintain, preserve and keep the peace" to refer to conduct by law enforcement officers. It is conduct intended to discourage and prevent acts that violate the tranquility and good order of a peaceful community or incite others to do so.

The phrase, as used in § 479, evokes a setting in which a law enforcement officer is performing official duties. We note that such a setting extends beyond the location where an arrest occurs. There is ample authority to suggest that an officer's efforts to "keep the peace" include ordinary police functions not directly involved in placing a person under arrest. See, e.g., *People v Little*, 434 Mich 752, 759; 456 NW2d 237 (1990); *People v Krum*, 374 Mich 356, 362; 132 NW2d 69 (1965); *People v Weatherspoon*, 6 Mich App 229, 232; 148 NW2d 889 (1967).

As we observed in *Little, supra* at 756, n 6, "[a] police officer is expected to be, and should be, in a constant state of readiness to quell any disturbance." Thus, activities

9

encompassed by the phrase "maintain, preserve and keep the peace" are patrolling, surveilling, responding to suspected criminal activity, quelling actual disturbances, and executing many other duties legally assigned to a police officer.

In this case, Trooper Spinner was responding to a complaint about a loud party complaint when he encountered defendant urinating on a lawn. He questioned defendant and observed signs of drunkenness. It was in that setting that he requested identification from him and encountered the lies at the center of this dispute. Since Trooper Spinner was executing his duties as a police officer when the encounter took place, we find that he was engaged in "efforts to maintain, preserve and keep the peace" within the meaning of § 479.

### "Obstruct"

The question becomes whether Vasquez "obstructed" Trooper Spinner's performance of those efforts. The portion of the statute at issue proscribes knowing and wilful acts that "obstruct, resist, oppose, assault, beat or wound" a police officer engaged in keeping the peace.

As we proceed, we are mindful of the well-settled purpose of the statute, recognized by virtually every court that has addressed § 479 since the Legislature enacted it in 1931. The purpose is to "punish an assault upon a public officer in the

discharge of his duty by a penalty more severe than that imposed for assaults on private citizens . . . ." *Little, supra* at 757, citing *People v Tompkins*, 121 Mich 431; 80 NW 126 (1899); *United States v Feola*, 420 US 671; 95 S Ct 1255; 43 L Ed 2d 541 (1975). Moreover, the statute is a tool for protecting officers from physical violence and harm. See, e.g., *Kretchmer, supra* at 64; *Philabaun II, supra* at 262, n 17.

The prosecution and our dissenting colleagues argue that the term "obstruct" should be construed broadly. They view it as encompassing any physical or oral act that causes delay or presents an obstacle to an officer's efforts to gather information. While such an expansive meaning may be consistent with a literal reading of the word, it does not comport with the legislative intent underlying § 479.

This Court often consults dictionary definitions to ascertain the generally accepted meaning of a term that is not expressly defined by statute. See *Consumers Power Co, supra*, at 163, n 10; *Oakland Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998). *Random House Webster's College Dictionary* (1984) defines "obstruct" as:

> 1. to block or close up with an obstacle or obstacles, as a road. 2. to interrupt, hinder or oppose the passage, progress, course, etc., of. 3. to block from sight.

However, as with the word "obstruct," dictionaries often contain multiple definitions and define a term using multiple terms that, themselves, have multiple definitions. Thus, exclusive reliance on dictionary definitions can blur, as much as clarify, the meaning of a word. Dictionaries are therefore properly regarded as mere interpretive aids for the court. See *Consumers Power Co, supra,* at 163, n 10; note, *Looking it up: Dictionaries and statutory interpretation*, 107 Harv L Rev 1437 (1994).

Keeping the lay definition in mind, along with the purpose of the statute, we next examine the statutory context in which the word "obstruct" appears. Our consideration of context involves an examination of the family of words or phrases associated with the word "obstruct" in § 479. This analytical concept is known in law by the Latin phrase *noscitur a sociis* ("It is known from its associates"). *Livonia Pub Schs, supra* at 390. It stands for the proposition that, when we seek the meaning of words and clauses, we do not divorce them from those that precede and those that follow. *Sanchick v State Bd of Optometry*, 342 Mich 555, 559; 70 NW2d 757 (1955). Words grouped in a list should be given related meaning. *Third Nat'l Bank in Nashville v Impac Ltd, Inc*, 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977).

12

In a similar vein, it is appropriate to consider the doctrine "ejusdem generis." Again from the Latin, it means "[o]f the same kind, class, or nature." Black's Law Dictionary (6th ed). If general words follow an enumeration of specific subjects, the general words are presumed to express only things of the same kind, class, character, or nature as the enumerated subjects. *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000). Of course, interpreting a statute, we must examine its objective, the harm it is designed to remedy, and we must apply a reasonable construction that best accomplishes its purpose. *People v Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996).

Here, the statute uses the word "obstruct" in a six-term list that contains "resist," "oppose," "assault," beat" and "wound." Defendant contends that each, when read in context, implies some action by a person that either causes or threatens physical harm or interference to a police officer. This is consistent with our interpretations of the statute in *Little* and *Philabaun II.*

Defendant urges that the word "obstruct" be read to describe a physical obstruction, such as a person physically blocking an officer from pursuing his duties. It can also mean a passive act of obstruction, defendant asserts, one that exposes an officer to harm or physically blocks his ability to

carry out his duties. Within the meaning of § 479, mere words, even lies, cannot "obstruct" unless they create an enhanced risk of physical interference or harm to an officer's personal safety, defendant contends.[5]

We find merit in defendant's interpretation. The six words, presented as they are in the statute, create a continuum. The first, "obstruct," is the mildest manner of violating the statute, and the final, "wound," the most severe. The dissent opines that the first three words preclude a finding that § 479 was intended to address only actual or threatened harm to police officers. This is so, surmises the dissent, because the word "assault" would be rendered nugatory if the "obstruct," "resist" and "oppose" were narrowed to the physical realm.

We cannot agree. Where broadly defined words are grouped with terms of specificity, the general words are interpreted as belonging to the same class as the narrowest in the list. *Sands Appliance Service*, *supra* at 242. Here, none will deny the terms "assault," "beat," and "wound" necessarily involve a physical component of actual or threatened harm. Therefore, for purposes of applying § 479, the doctrine of ejusdem

---

[5]I note that defendant's observation about limits on the way "words" can violate the statute says nothing about whether acts that actually or threaten to physically interfere with a police officer violate § 479. Indeed, as we would hold today, such acts *do* constitute obstruction under the statute.

14

generis supports restricting the first three terms in the list to behavior involving actual or threatened physical harm or physical interference.

Indeed, the only common thread that reasonably can be woven through the entire list is the element of actual or threatened physical interference or action. Such an interpretation provides the most effective way of addressing the mischief the statute was designed to remedy. On this basis, we find that the Legislature drafted the list of six verbs to describe a fluid string of behavior that constitutes a violation of the statute. And, it follows, the words and the concepts covered are interrelated.

"Obstruct," "resist," "oppose," and "assault" address actions or words that threaten physical harm to an officer or impose a physical barrier to the officer's performance of official duties. The final two, "beat" and "wound," proscribe actual physical harm to an officer. When viewed together, in proper context, the words depict the range of conduct. The behavior runs from verbal utterances and physical acts that threaten to physically interfere with an officer to the erection of physical barriers, physical interference, and the perpetration of physical harm.[6]

---

[6]Section 479 exists today in its original form. The Legislature has never amended it.

15

Moreover, one can infer that, in elevating these offenses to high misdemeanors, the Legislature intended to reserve harsher punishment for assaulting police officers than for committing ordinary assault. This Court drew that inference in *Little, supra*, when making a plain language analysis of the statute.[7]

There are other reasons to interpret "obstruct" narrowly. Today's holding, requiring more than mere lies to offend § 479, avoids the creation of an unduly harsh penal scheme.[8] It

---

[7]The prosecution also argues that defendant's lies should be included in conduct proscribed by § 479 because they could have led to a criminal charge being made against an innocent person. Indeed, the prosecutor contends that suspects who provide false identification to police officers typically do so for one of two reasons. First, they wish to avoid being treated as habitual offenders by concealing their true identity and the nature of their past record. Second, they intend to abscond from justice by avoiding future court hearings in connection with the criminal charge. Authorities then encounter difficulties locating a fugitive because they do not know his true name.

In this case, had Vasquez successfully lied, then absconded from justice, a warrant would have been issued for the arrest of a different person. The prosecutor contends that § 479 should be interpreted broadly enough to encompass Vasquez' actions, because it will discourage similar deceptive behavior. Certainly, some criminals engage in the dishonest activities described by the prosecutor. Had Vasquez absconded from justice, he could have implicated an innocent person in a criminal proceeding. While this is a good reason for the Legislature to consider revising the statute, it does not advance us in ascertaining legislative intent. That is because it is not pertinent to ascertaining the meaning to the words used in § 479.

[8]This point is made clear by careful consideration of the
(continued...)

16

rejects the scenario embraced by the prosecutor and our dissenting colleagues that would contravene legislative intent and create a statutory meaning ripe for misuse and injustice. Here, as defense counsel aptly reminds, Vasquez was caught and charged with being a minor in possession, a crime not punishable by incarceration. Under the reading sanctioned by the prosecutor and the dissent, a lie about his name and age could bring him a two-year jail sentence.

Moreover, if mere lies violated the statute, virtually any misstatement of fact given to a police officer by any witness or bystander *could* lead to a resisting and obstructing conviction. Such harshness could chill citizens' willingness to cooperate with police investigations. Although the prosecution contends that this weapon would be used

---

[8](...continued)
broad application endorsed by the dissent. The dissent would interpret "obstruct" to proscribe any oral utterance that creates a synapse of delay for an officer carrying out official duties. The absurdity of such a rule is apparent when the following hypothetical example is considered:

Suppose a man witnesses a pickpocketing crime on the street. Suspecting that the man saw the crime, an officer approaches and queries, "Which way did he go?" The man does not respond for a full ten seconds. Then, he says, "He went that way," and points in the direction the pickpocket fled. In such a case, under the dissent's rule, the man's honest answer would constitute an obstruction. The manner in which the man answered the officer's question created a delay in the officer's gathering of information pursuant to an investigation. Contrary to the dissent's argument, this certainly is not conduct that the Legislature intended to penalize.

17

"sparingly" by law enforcement officers, we are concerned that it would open wide a door for the unscrupulous. Thus, we reject the request to read it into § 479.

For the reasons previously set forth, we would hold that the Legislature enacted the resisting and obstructing arrest statute to penalize actual or threatened acts of physical interference or violence against police officers. Lies, alone, do not violate the statute. Vasquez' use of a false name and age, in this case, did not rise to an obstruction within the meaning of § 479 and therefore did not offend it.

CONCLUSION

We conclude that an officer's attempts to "maintain, preserve and keep the peace" under MCL 750.470 encompasses the execution of all lawfully assigned duties of a law enforcement officer. In this case, Trooper Spinner was actively engaged in efforts to keep the peace when he encountered Vasquez.

We would hold, also, that the Legislature intended § 479 to operate against actual or threatened physical harm to or interference with a law enforcement officer engaged in keeping the peace. It is intended to make unlawful the placement of physical barriers before an officer engaged in the performance of official duties. Therefore, the word "obstruct" as used in the statute means interference that *physically* hinders the progress of an official action or creates actual or threatened

18

harm to the police. The statute contemplates both expressed and implied threats of such harm.  Mere lies are insufficient to trigger a violation.

Thus, Vasquez' conduct was not of the kind that the statute was designed to prevent. The decision of the Court of Appeals retaining the § 479 charges against Vasquez should be reversed.

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                       No. 116660

MARK JOHN VASQUEZ, JR.,

    Defendant-Appellant.

_____

CORRIGAN, C.J. (*dissenting*).

    I respectfully dissent. While I agree with the lead opinion's conclusion that the police officer in this case was attempting to "keep the peace," I reject its unnecessarily narrow reading of the word "obstruct."[1] In effect, the lead opinion inserts a new element—actual or threatened physical interference—into the resisting and obstructing statute. In my view, defendant's alleged conduct—lying to the officer about his name and age—clearly falls within a common

---

[1] For the reasons set forth in this dissent, I also disagree with Justice Kelly's separate opinion, which reaches essentially the same conclusion as the lead opinion.

1

understanding of the word "obstruct."  Accordingly, I would

affirm the judgment of the Court of Appeals.

### I. The Rules of Statutory Interpretation

Resolution of this case requires an examination of the

text of the resisting and obstructing statute.[2]  As set forth

in *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119

(1999), the principles guiding our interpretation of statutes

are well established:

> The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature.  *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994).  See also *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997).  This task begins by examining the language of the statute itself.  The words of a statute provide "the most reliable evidence of its intent."  *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).  If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.  No further judicial construction is required or permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996).

The Legislature has provided that "[a]ll words or phrases

shall be construed and understood according to the common and

approved usage of the language."  MCL 8.3a.  We thus consult

a lay dictionary when defining common words or phrases that

lack a unique legal meaning.  See *Robinson v Detroit*, 462 Mich

---

[2]  This Court reviews de novo questions of statutory interpretation.  *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

2

439, 456; 613 NW2d 307 (2000).

## II. Analysis

The resisting and obstructing statute states:

> Any person who shall knowingly and wilfully *obstruct, resist or oppose* any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall *assault, beat or wound* any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or attempted to serve or execute the same, or who shall *so obstruct, resist, oppose, assault, beat or wound* any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than one thousand dollars. [MCL 750.479 (emphasis added).]

Resolution of this case turns on our interpretation of the word "obstruct" as it refers to police attempts to keep the peace. Consistent with the principles of statutory interpretation set forth above, we must examine the "common and approved usage" of the word. MCL 8.3a. As noted in the lead opinion, *Random House Webster's College Dictionary* (1991) defines "obstruct" as: "1. to block or close up with an obstacle . . . . 2. to hinder, interrupt, or delay the

passage, progress, course, etc. of. 3. to block from sight; be in the way of (a view, passage, etc.)." Although this definition of "obstruct" clearly encompasses physical interference, it is not limited to physical interference. Certainly, it is possible to hinder, interrupt, or delay an officer's attempts to keep the peace without resorting to actual or threatened physical interference, as the lead opinion would require.

This Court recognized as much in *People v Philabaun*, 461 Mich 255, 264; 602 NW2d 371 (1999), when we held that the defendant's polite refusal to comply with a search warrant for the extraction of blood, "although indisputably passive in nature, was nevertheless sufficient to constitute obstruction, resistance, or opposition." We explained that "[p]hysical resistance, threats, and abusive speech can be relevant facts in a prosecution under this statute, but none is a necessary element." *Id.* at 262. Today, the lead opinion attempts to revise *Philabaun* by explaining that the defendant's nonphysical conduct in that case actually "rose to the level of threatened physical interference." *Ante*, p 17. Thus, under the lead opinion's curious logic, although neither physical resistance nor threats are necessary elements of the statute, prosecutors must still prove the existence of either an actual or threatened physical interference.

4

The lead opinion reasons that the defendant's conduct in *Philabaun* rose to the level of threatened physical interference because, when he refused to cooperate, "the next *likely* sequence of events *very well could have been* the *possible* injury of a police officer attempting to enforce the search warrant." *Ante,* p 17 (emphasis added). Accordingly, rather than focusing on a defendant's actual oral or nonphysical act of obstruction, the lead opinion demands a difficult inquiry into "likely" and "possible" consequences of such an act. It would have courts ask whether the defendant's act would place the police officer in a "situation in which his next act would, *more likely than not*, involve physical confrontation." *Ante*, p 18 (emphasis added). I do not believe that such inquiry is practicable or required by the plain statutory language. Consistent with the most straightforward reading of our decision in *Philabaun*, I would hold that oral, nonphysical acts that hinder, interrupt, or delay an officer's attempts to keep the peace constitute obstruction under the resisting and obstructing statute.

Applying the statute to these facts, defendant's alleged conduct falls within the plain meaning of the word "obstruct." A state trooper tried to gather information to investigate his suspicion that defendant was an intoxicated minor. When asked to provide his name and age, defendant had two lawful choices: he could have answered truthfully or exercised his

5

constitutional right not to answer at all. Instead, defendant chose to lie. By doing so, he impeded the officer's investigation by creating a nonphysical obstacle to the officer's attempt to gather accurate information.[3]

The lead opinion, relying on the doctrine of *noscitur a sociis*, concludes that the word "obstruct" refers only to physical obstruction despite the fact that the common understanding of the word clearly encompasses both physical and nonphysical obstruction. The *noscitur a sociis* doctrine stands for the simple proposition that the words of a statute should be understood in context. See *Tyler v Livonia Schs*, 459 Mich 382, 390-391; 590 NW2d 560 (1999). While I have no objection to interpreting the word "obstruct" in the context of its placement in the statute, I disagree with the lead opinion's conclusion that the Legislature's placement of the word "obstruct" in a list of words also including "resist, oppose, assault, beat or wound," indicates an intent to limit the common meaning of the word to include only physical obstruction. The lead opinion's conclusion that *physical* interference is the only element common to all six words overlooks the fact that the simple notion of interference also

---

[3] While the facts of this case indicate a de minimis violation of the statute, I caution my colleagues that hard facts make bad law. It is certainly conceivable that under different factual circumstances, lying to a police officer during an investigation could have grave consequences.

connects all six words.  While all six words are verbs that *could* be used to describe acts of physical interference, only two of them, "beat" and "wound," definitely require a physical act; the other four may also be used to describe nonphysical acts.  Thus, read in context, it is at least equally likely that the Legislature meant to criminalize *all* types of interference, both physical and nonphysical.

More fundamentally, the unique structure of the statute at issue demonstrates that the Legislature did not intend that its grouping of the six words together give special meaning to any of the words.  At the beginning of the statute, regarding service of process, the words "obstruct, resist, or oppose" are specifically set apart from the words "assault, beat, or wound."  Later, however, when the statute refers to keeping the peace, all six words are listed together.  Notably, in the second instance the list is preceded by the word "so," which refers readers directly back to the statute's earlier use of the same words.  Because the meaning of each word contained in the list of six is established by reference to the first part of the statute, where "obstruct, resist, or oppose" are set apart from "assault, beat, or wound," the fact that the word "obstruct" *later* appears with the words "assault, beat or wound" should not be given any special significance.

To the extent that the meaning of the word "obstruct" can be determined from context, the only relevant comparable words

are "resist" and "oppose." Because resistance and opposition can be oral or nonphysical just as easily as they can be physical, proper application of the doctrine of *noscitur a sociis* does not support the conclusion that the Legislature intended the word "obstruct" to have a limited meaning. If anything, the Legislature's decision to initially separate the words "obstruct, resist, or oppose" from the words "assault, beat, or wound" suggests an intention to avoid an interpretation that would *require* a physical component.

### III. THE LEAD OPINION'S OTHER ARGUMENTS

Perhaps not entirely satisfied with the force of its statutory construction argument, the lead opinion includes a number of additional arguments in support of its position. First, the lead opinion suggests that my interpretation of the statute would criminalize a defendant's assertion of the constitutional right against compelled self-incrimination. See *ante*, p 9, n 3. I disagree. The silence of a person with no independent legal duty to speak simply cannot be characterized as an obstacle to a police investigation in the same manner as an affirmative untruthful statement. Unlike a false statement, which by its nature is misleading, lawful silence merely requires police officers to perform the full extent of their investigative duties—unaided and unimpeded—within the boundaries of the law. In other words, a legally justified refusal to offer assistance is not the

8

equivalent of a positive decision to interfere.

Second, the lead opinion relies heavily on the notion that the Legislature *could have* written the resisting and obstructing statute to more clearly criminalize lying to the police by simply including "lying" in the list of prohibited actions. *Ante*, pp 13-15, n 8 at 16. This argument is not persuasive. Generally speaking, our job is to interpret the meaning of the plain language of the words actually used by the Legislature. Rather than making assumptions based on what the Legislature could have done, we should strive to determine what it actually did. Certainly, our job would be easier in this case if the Legislature had specifically listed "lying" among the prohibited actions. Nevertheless, the Legislature's failure to use the word "lying" does not alter the conclusion that lying can "obstruct" a police investigation.

Finally, the lead opinion suggests that its position is bolstered because the Legislature has specifically addressed the problem of lying to police officers in other statutes. *Ante*, p 11, n 4. The first statute identified in the lead opinion, MCL 257.324(1)(h), is clearly inapplicable because it relates only to persons detained for violations of the motor vehicle code. The second statute identified in the lead opinion, MCL 750.217, is also arguably inapplicable because it has been construed to apply only to situations involving physical concealment. See *People v Jones*, 142 Mich App 819,

9

823; 371 NW2d 459 (1985) (holding that lying to the police does not constitute a "disguise"). Accordingly, the prosecutor's only alternative in this situation was to charge defendant under MCL 750.479.[4]

IV. CONCLUSION

The lead opinion's conclusion that the crime of resisting and obstructing requires actual or threatened physical interference has no basis in the text of the statute. Our recent decision in *Philabaun* established that oral or nonphysical conduct may fall within the plain meaning of the statute. For these reasons, I respectfully dissent.

WEAVER and YOUNG, JJ., concurred with CORRIGAN, C.J.

---

[4] Even if MCL 750.217 or MCL 257.324(1)(h) were available under these facts, nothing in either statute reflects a legislative intent to limit the prosecutor's charging discretion. The enactment of a statutory provision covering a factual scenario does not automatically preclude a prosecutor from proceeding under a different statutory provision that also encompasses the same factual scenario. E.g., *People v Little*, 434 Mich 752, 760; 456 NW2d 237 (1990).